UHLMAN et al. v. ARNHOLDT & SCHAEFER BREWING CO.

(Circuit Court, E. D. Pennsylvania.  January 4, 1893.)

No. 39.

1. PATENTS FOR INVENTIONS—ANTICIPATION—BEER-FILTERING PROCESS.
    The invention described in letters patent No. 378,379, issued February 21, 1888, to Heinrich Stockheim for a filtering process for beer, was not known or used by others in this country prior to the time when knowledge thereof was conveyed to the inventor's agents or attorneys in this country for the purpose of applying for the patent.

2. SAME—CONSTRUCTION OF CLAIMS—PROCESS AND FUNCTION OF MACHINE.
    The four claims of the Stockheim patent, being all directed to the accomplishment of the filtration of beer in its passage from the store cask to the keg into which it is drawn for sale, without material loss of gas, and without foaming in the keg, are valid, as covering a true "process," and not merely the function of a machine.

3. SAME—INVENTION—ANTICIPATION.
    The Stockheim patent was not anticipated by the Enzinger patent of November 12, 1878, or by the description contained in the Enzinger "pamphlet," or by any other patents shown in evidence, and is a valid process patent.  Uhlmann v. Brewing Co., 41 Fed. Rep. 132, approved.

4. SAME—INFRINGEMENT.
    This patent is infringed by defendant, as the process practiced by it in the use of the "Klein filter" is the same process covered by the patent.

5. SAME—EVIDENCE OF PRIOR KNOWLEDGE AND USE.
    On a question as to which of two inventions, both made in Germany, was first "known or used" in this country, within the meaning of Rev. St. § 4886, priority for one of them cannot be established by showing that a certain letter, with inclosures purporting to describe the invention, was received and thoroughly examined by a firm of patent lawyers in this country, when the papers were of such a nature that even the most skilled expert could not have gleaned from them any practical or sufficient knowledge of either invention to put it into practical operation.

6. EVIDENCE—PRESUMPTIONS—RECEIPT OF LETTERS.
    The time at which a letter from Germany was received in this country cannot be established by witnesses who base their testimony entirely upon presumptions or calculations resting upon the date of the letter; for the date of a letter alone affords no basis whatever for a calculation as to the time of its receipt, and is not even proof of the time of mailing, or that it was ever mailed.

In Equity.  Bill by Simon Uhlman and Frederick Uhlman against the Arnholdt & Schaefer Brewing Company for infringement of a patent.  Decree for complainants.

Wetmore & Jenner, for complainants.
Witter & Kenyon, for defendant.

DALLAS, Circuit Judge.  This is a suit for alleged infringement of patent No. 378,379, dated February 21, 1888, granted to Heinrich Stockheim for a filtering process for beer.  It is now for decision upon

bill, answer, replication, and proofs. The specification states the object of the alleged invention, its importance, the method commonly in prior use in this country, the defects of that method, the objections to mechanical filtration as theretofore practiced, and the absence of those objections from what the patentee designates as his "improved method of filtering," as follows:

"The object of this invention is the filtration of beer which contains mechanical impurities, and also carbonic acid gas under pressure. In the filtration of such liquids it is important that the liquid beer, for example, should be filtered continuously in its passage from the store cask to the keg into which it is drawn for sale, without material loss of the gas contained in the beer, and without material foaming in the keg into which the filtered beer is delivered. The methods in use prior to my invention for clearing beer of the yeast which is produced in it, as a product of fermentation, have generally involved the use of isinglass, by which the yeasty particles are collected and precipitated to the bottom of the tun or cask containing the beer. Isinglass is, however, costly, and involves a very large annual expenditure where any considerable amount of beer is brewed, and much trouble in preparing it for use as a 'fining,' and it is slow in its operation; nor are the results entirely satisfactory, as all of the yeasty particles are not thereby removed, but some portion remains, and, yeast being a fungous growth, that which remains propagates more yeast, fermentation continues, and in consequence the beer is apt to become cloudy and spoiled. This result is especially noticeable in beer which is bottled and intended to be kept for some time, either for export or domestic use. In mechanical filtration, variations in the supply of beer to the filter, and in the speed with which the filtered beer is discharged into the keg, permit the carbonic acid gas generated in the beer to escape in considerable quantities while the beer is passing through the filter; and the beer, having lost its carbonic acid gas, or a considerable quantity of it, comes out flat and insipid, or is discharged into the keg in a foamy condition, and soon becomes worthless. Besides which the escape of the gas in the filter causes foaming therein, the foam collects upon and clogs the pores of the filtering substance, or the gas permeates the filtering substance, thereby affecting its efficiency as a separator of mechanical impurities, or both results ensue, and thus the operation of the filter is materially retarded, the variations of supply and discharge are increased, and in consequence the filtering substance fails to collect much of the yeast. To modify these results would require the frequent changing of the filtering substance, and this would involve, not only expense for filtering material, but considerable loss of beer, and delays in the filtering operation. Continuous filtration, without material variation in the speed with which the beer is discharged from the cask, is also important, because, if the speed of the discharge is materially diminished the accumulated air pressure will burst the cask, unless it is closely watched; and the cask being usually in a cellar, where neither continuous sunlight nor gaslight is permitted, because either would elevate the temperature of the cellar, such watching is inconvenient. For these reasons, among others, mechanical filtration has not, I believe, been generally or successfully practiced by beer brewers before my invention. By my improved method of filtering, I dispense entirely with the use of isinglass or other finings, and thus very great economy is secured. The beer is thoroughly clarified, all, or substantially all, of the yeasty particles being removed. The operation of filtering is rapid and continuous, without material variation in speed, and without the necessity of changing or cleansing the filtering substances, the carbonic acid gas is substantially preserved in the beer, and the beer comes out of the filter, retaining all its brilliancy and liveliness, ready to be discharged into the keg at the racking-off bench without any danger of subsequent cloudiness or other deterioration due to the filtration, and without having had imparted to it any undesirable taste."

It is proper, though not important, that it should be noted, in connection with the foregoing extract, that in the actual use of the Stock-

heim apparatus, and practice of the process in suit, isinglass is not entirely dispensed with, but is, in many if not in all instances, used as a valuable, if not necessary, adjunct.

One of the several defenses interposed may be separately and first considered. It is that the alleged Stockheim invention was anticipated by the Klein invention and patent, which the defendant uses. The Klein dates of application and of patent are both earlier than those of the Stockheim. The only question is as to the respective dates of invention. Whichever of the alleged inventions was new under the statute, (section 4886,) is first in time, and therefore is first in right; and of their relative novelty the statutory tests, so far as material to this case, are embodied in the inquiry, which of them was first known or used in this country, or described in any printed publication in this or any foreign country? They were, in fact, both invented in Germany, but the dates of their respective invention in this country are to be determined as I have indicated; and if it should be found that the Klein filter, as used by the defendant, preceded the Stockheim process, it would result, irrespective of other questions, that such use of the former could not be an infringement of the latter.

For the Klein, as well as for the Stockheim, dates, respectively, earlier than February-March, 1887, have been claimed; but to recapitulate the evidence presented in support of those claims, upon either side, would greatly extend this opinion, and, as I think, without necessity. It is enough to say, with respect to them, that, having examined that evidence with care, I am fully satisfied that an anticipatory date for the Klein has not been thereby established. On the contrary, I have arrived at the conclusion that the priority of the Stockheim has been shown, independently of the single question which I am about to state, and which alone, because of the prominence given it in argument, I feel called upon to discuss in this connection. For the defendant it is contended (complainants denying) that the Klein date has been carried back as far, at least, as February 20, 1887, and that March 2, 1887, set up (but disputed) as an alternative (not as the earliest) date for the Stockheim, has been, accordingly, clearly anticipated. To determine whether or not this contention should be sustained, and also whether the Stockheim March date has been established, the evidence relating to both of these asserted dates must be considered.

The claim of the February, 1887, date for the Klein is founded upon two letters, with inclosures, which were mailed from Germany, and received in this country by a firm of patent solicitors to whom they had been addressed for the purpose of enabling them to proceed for the procurement of a United States patent. The first of these letters, dated January 22, 1887, and its inclosures, were received upon February 8, 1887. They were read on the day of their receipt, or soon thereafter, and certainly before March 2, 1887; and the description and drawings, including the inclosures, were "turned over" before March 2, 1887, to an employe of the firm, "with instructions to him to put the case in proper shape for filing." The evidence entirely satisfies me upon these points, and has also, though not quite so

.readily, convinced me that at about the same time the papers re-ferred to were fully understood, and that whatever knowledge they were then capable of imparting they did in fact convey to at least one person, and possibly to others. It is, however, not possible that any person, even the most expert and well informed, could at that time have derived from any or all of them any practical or sufficiently complete knowledge of the Stockheim process, or of the Klein filter, as used by the defendant. No person, however skilled, could, from these documents, have gleaned the information requisite for the practice of the method of treatment in suit. They contain no suggestion of any process equivalent to, or in conflict with, the Stockheim invention or patent, nor was there any use or reduction to practice, of any sort whatever, under or in pursuance of them. Therefore, without regard to any question of date, they cannot avail the defendant.

The second letter (dated January 28, 1887) was also received at Washington by the same firm of patent solicitors. It was accompanied by an additional drawing and further instructions. These documents conveyed information and imparted knowledge not derivable from the first letter and its inclosures. They depicted and described a "filtering contrivance" more closely resembling, than in the first instance, the apparatus used under the Stockheim method, and more nearly available for its practice. Whether or not they did actually make that process known is a question which I do not deem it requisite to enlarge upon; but I am of opinion that, in fact and in law, they did not. My conclusion as to this letter and its inclosures might, if necessary, rest solely upon the defendant's failure to prove that they were received, read, and understood at a date early enough to render them—no matter what they disclosed—anticipatory of the Stockheim invention. The defendant claims that they were received upon February 15, 1887, or certainly not later than February 20, 1887. Looking at the date of the letter, and assuming that it was at once mailed, and was carried and delivered with the speed and promptitude customary under ordinary conditions, this claim would not appear to be unreasonable; but these assumptions are not necessarily correct, and the law does not authorize their acceptance in lieu of evidence. The date the letter bears is, prima facie, the day upon which it was written, but it may not have been posted upon the same day. Its voyage may have been a delayed one. Its delivery may not have been immediate. It is not impossible that the letter was written in advance of the preparation of its inclosures, or that, from any other of several causes which might be suggested, its actual receipt was considerably postponed. The allegation that it was received, and, with its inclosures, read and understood, before March 2, 1887, is a material and essential one. It has been made by the defendant, and the burden of proving it was upon it. Has it done so by evidence which is relevant and sufficient? The date of the receipt of the first letter was at the time noted in writing by its recipient, and the testimony, supported by that memorandum, was quite positive and satisfactory. No such contemporaneous entry was made as to the receipt of the second letter. The evidence as to that was confined—necessarily, no doubt—to the testimony of the two members

of the firm to which the letter had been sent. They conferred together shortly before their examination, and endeavored to fix the time at which it had been received. They knew, so far as they had not forgotten, every circumstance which might serve to bring to the memory of either of them the fact which they desired to recall, but neither of them was able to say more, when examined, than what he "presumed" or "should judge" upon the subject; and their testimony with respect to it is argumentatively based upon supposed presumptions, which, if allowable at all, would be for application by the court, and not by a witness. They are, however, not allowable at all. "There is no presumption of law that a letter directed and mailed to one at the place where he usually received his letters was received by him." Bank v. McManigle, 69 Pa. St. 156; Kenney v. Altvater, 77 Pa. St. 38. From its postmark, the fact that a letter was mailed may be inferred; but by that, or other admissible evidence, the mailing, when material, must be proved. It will not be presumed from evidence that it had been written. So as to time of mailing. No presumption whatever arises from the date written in the letter; and in this case no evidence, direct or otherwise, of the actual time of posting, was offered. We have not, nor had the witnesses, anything upon which to legitimately base a calculation of the time at which this letter was received; but, even if the time of mailing had been conclusively shown, it still would not be permissible to accept the result of a calculation founded thereon, as determining the date of delivery. The date of a postmark upon a letter is not evidence that it was forwarded on that day. Bank v. Townsley, 102 Mass. 177. A fortiori the date of a letter is not; nor even, it would seem, direct proof of actual time of posting; and yet upon the date of this letter all proof of the time of its receipt is clearly dependent. It is, of course, quite possible that the fact is as the witnesses have supposed it to be, but the suppositions of witnesses are not proof. Nor may the court, in the absence of proof,—except that this letter bore a certain date, was at some time mailed, and was at some subsequent time received,—presume that it was received upon any particular day, or within any particular period. The claim of a February, 1887, date for the Klein has not been maintained.

Has a March, 1887, date for the Stockheim been shown? This depends upon the correct reading of an application filed March 2, 1887, on behalf of Stockheim, for a patent (No. 229,423) for an "improvement in filtering apparatus." Here we have no question of time to determine, but only whether the application referred to fully disclosed, as is claimed, the invention of the later patent in suit. Judge Gresham (Uhlmann v. Brewing Co., 41 Fed. Rep. 139) and the commissioner of patents (Zwietusch v. Stockheim, 53 O. G. 758) appear to have held that it did; and my own examination and consideration of the document itself have led me to the same conclusion. Dr. Henry Morton, an expert witness, has in this case distinctly and positively testified to the same effect, and the grounds assigned by him for his opinion and testimony are satisfactory to me. Nothing more need be said. The claim of a March 2, 1887, date for the Stockheim has been supported.

Upon all the evidence, I am of opinion that the defense of anticipation by the Klein invention, which the defendant uses, has not been established.

The remaining defenses involve construction of the patent; determination of its validity; the question of infringement.

1. The claims are as follows:

"(1) The process of filtering beer, consisting in drawing the beer to be filtered from the cask under a pressure exceeding atmospheric pressure, conducting the same to and through a filtering apparatus in which that pressure is maintained during the filtering operation, keeping the filtering apparatus full of beer, collecting and carrying off any air entering the filter along with the beer, and gas separating from the beer during the filtering operation, and discharging the filtered beer from the filter under pressure, substantially as hereinbefore set forth.

"(2) The described process of filtering and keeping beer, which consists in forcing the beer under a pressure exceeding atmospheric pressure from the store cask through a filtering apparatus, and thence to the keg, keeping said apparatus full of beer during the operation, and collecting and carrying off from the beer, during its passage from the store cask to the keg, air that may be mingled with the beer, and gas that may separate from the beer, substantially as and for the purposes hereinbefore set forth.

"(3) The process of filtering beer, consisting in drawing the beer from the cask under a pressure exceeding ordinary atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, and creating and maintaining a back pressure in the filter, so as to keep the filter full of beer, substantially as described.

"(4) The process of filtering beer, consisting in drawing the beer from the cask under a pressure exceeding ordinary atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, creating and maintaining a back pressure in the filter, so as to keep the filter full of beer, and collecting and carrying off from the beer any gas separating from the beer on its way from the store cask to or through the filtering apparatus, substantially as described."

These claims are each, in terms, for a process, and are all directed to the accomplishment of—

"The filtration of beer in its passage from the store cask to the keg into which it is drawn for sale, without material loss of the gas contained in the beer, and without material foaming in the keg into which the filtered beer is delivered."

Drawing the beer from the store cask under a pressure exceeding atmospheric pressure, and conducting the same to and through a filtering apparatus in which that pressure is maintained, is stated, in substantially the same way, in each of the claims. This, however, would not alone keep the filter full of beer, or suffice to prevent material loss of gas, and to avoid foaming at the keg. Therefore, other and further means were necessary, and are claimed: First claim:

"Collecting and carrying off any air entering the filter along with the beer, and gas separating from the beer during the filtering operation, and discharging the filtered beer from the filter under pressure."

Second claim:

"Collecting and carrying off from the beer, during its passage from the store cask to the keg, air that may be mingled with the beer, and gas that may separate from the beer."

Third claim:

"Creating and maintaining a back pressure in the filter, so as to keep the filter full of beer."

The fourth claim comprises all the steps of the preceding claims, except that it does not include any mention of collecting and carrying off air; and, as to collecting and carrying off gas, it refers only to "any gas separating from the beer on its way from the store cask to or through the filtering apparatus."

From this analysis, it is apparent that no claim is made for any particular mode or form of apparatus. No machine is claimed, and the patent must be sustained as for a process, or it cannot be sustained at all. It is contended, however, that it cannot be sustained as a process patent, because, as is alleged, no process is disclosed, but "merely the function of a machine." This contention would be sound, if the allegation upon which it rests were well founded. The operation of a machine is not patentable. The machine itself may or may not be. If it is, a patent for it is, in effect, a patent for its operation. If it is not, no monopoly of its operative faculty can be vested in any one. The function of a patented machine belongs to the owner of the machine patent; of an unpatented machine, to the public. A process is something quite distinct both from a machine and the function of a machine. It is a patentable art; and the first and original inventor of a new and useful process is entitled to protection under the patent law, without regard to any machine, or to the function of any machine, which he may employ in conducting the process. To constitute a patentable process, however, the desired result must be accomplished by a mode of treatment of the material to be affected, and not be due merely to the particular mechanism employed, or be the product simply of its operation. To determine whether a particular result is properly attributable to a mode of treatment or to the instrument employed, is often difficult, but never impossible. Where a machine is requisite to the practice of a process, both are, necessarily, in operation at the same time, and the machine contributes to the attainment of the desired result; but wherever it is discerned that there is a new method of treatment, and that the machine (whether new or old) is an instrument for the reduction of that mode to practice, the existence of a patentable process is established, no matter how greatly the machine may contribute to its performance.

Applying these views to the construction of the patent in suit, I entertain no doubt that it is for a process, and that a patentable process, not merely the function of a machine, was claimed by the patentee.

2. Was Stockheim the original and first inventor of the patentable process claimed? The defendants allege that he was not, and contend that the proof which they have made with respect to the prior state of the art maintains this allegation. They have proved nine American patents, all of earlier date than the Stockheim invention, but by or in none of these was the Stockheim invention patented or described. I have examined them all, and the evidence relating to them, and cannot perceive that the process in suit was described in

any of them, or that even the Enzinger filter, (patent of November 12, 1878,) which seems most nearly available for the purpose, could be successfully used to conduct the Stockheim method of treatment. It is certain that none of them ever was so used. In some of them there may be found some part of the mechanism employed by Stockheim; and, viewed in the light which his invention has cast upon the subject, it may be seen that the end which he reached was, perhaps, almost attained by others. Still, the fact remains that the very valuable result which he accomplished never was achieved until his process gave it to the trade. The effort which has been made to show anticipation by the prior uses of the Enzinger filter, which have been proved, do not refute this conclusion. I cannot, upon the evidence, find that the process in suit was at any time substantially and successfully practiced or disclosed by any such use. On the contrary, minute and careful investigation of the Enzinger filter has fully convinced me, as already mentioned, that it does not supply means by which the Stockheim process could be successfully conducted. The Enzinger pamphlet (in evidence) gives no support to the defendant's contention. Like the patent, and the uses already referred to, it does not describe or indicate the Stockheim method of treatment. It does not show the Stockheim process, and that it does not do so is quite persuasive that neither did the Enzinger patent or uses do so. It is not necessary to pursue the subject further. I agree with the opinion expressed by Judge Gresham in Uhlmann v. Brewing Co., 41 Fed. Rep. 132, that neither the Enzinger pamphlet nor Enzinger patent "disclosed the Stockheim invention. It does not appear that the pamphlet would enable a skilled workman to construct a filter which would carry out the Stockheim process." It follows that Stockheim was an original and first inventor, if he made any invention at all. Whether he did anything involving invention, within the meaning of the patent law, depends wholly upon a question already discussed, with reference to the claims of his patents. Reverting to the principles there mentioned, and, without repeating them, applying them to the actual invention, I am of opinion that Stockheim invented a patentable process, and did not claim as an art what was merely the function of a machine. That his invention, if otherwise maintained, is useful, has not been questioned, and, I think, is not open to question. I have reached the conclusion that the patent in suit is a valid process patent.

3. Upon the whole case, the arguments, both oral and printed, were very able and thorough. They have received careful attention; but to review them at length would not be reasonably practicable. This is especially true of the exhaustive presentation of the views of counsel for the defendant in support of their contention that the complainants have failed to sustain their allegation of infringement. Without lengthy discussion of several details, it would not be possible to deal intelligently with the particulars involved in this question; but the result at which I have arrived, and the principles which have directed my investigations, may be very briefly stated and indicated: The machine used by the defendants is the Klein filter. The identity or equivalence of that machine, as a machine, with the apparatus used

by the complainants, is not, however, the proper subject of inquiry. The true question is: Does the defendant, as it uses that machine, practice the patented process? To this question the evidence and exhibits admit of none but an affirmative answer. The method of treatment is the same in each instance, and both accomplish the same result. Every step and feature of the complainants' process are used by the defendant. The complainants' allegation of infringement by the defendant is maintained. Decree for complainants, in the usual form.