## GERMAN–AMERICAN FILTER CO. OF NEW YORK v. LOEW FILTER CO. et al.

### (Circuit Court, N. D. Ohio, E. D. June 30, 1900.)

### No. 6,029.

**1. PATENTS—CONTRIBUTORY INFRINGEMENT.**

One who makes and offers for sale to the public an article adapted for use in a patented process, with the intent and purpose that it shall be so used, and which is so used by purchasers, is liable as a contributory infringer.

**2. SAME—ANTICIPATION—MEASURE OF PROOF.**

One who alleges anticipation to defeat a patent must establish his claim by clear and cogent evidence.

**3. SAME—PROCESS OF FILTERING BEER.**

The Stockheim patent, No. 378,379, for a process of filtering beer, was not anticipated by the King apparatus for straining beer in racking off, for which an application for a patent was made which did not recognize or describe the principle of keeping the beer during filtration under both forward and back pressure to prevent the escape of the gas, which is an essential feature of the Stockheim process.

**4. SAME—INFRINGEMENT.**

The manufacture and sale of a filter differing in no essential particular from that described in the Stockheim patent, and adapted for use and used in the process of such patent, *held* contributory infringement, against which a preliminary injunction should be granted.

In Equity. Suit for infringement of a patent. On motion for preliminary injunction.

Wetmore & Jenner and Hoyt, Dustin & Kelley, for plaintiff.

Francis C. McMillin, for defendants.

DAY, Circuit Judge. This case is before the court upon a motion for a preliminary injunction. The action seeks an injunction and accounting for alleged infringement of letters patent of the United States No. 378,379, granted February 21, 1888, to Uhlmann and others, as the assignees of one Stockheim, and conveyed to the plaintiff corporation, which is now the owner of the patent in question. An answer has been filed denying validity of the patent and infringement by the respondent. Numerous affidavits have been filed, and the case thoroughly and ably argued by counsel. The patent in controversy has been the subject of much litigation, and was sustained by the circuit courts of the United States in Uhlmann v. Brewing Co. (C. C.) 53 Fed. 485; Uhlmann v. Brewing Co. (C. C.) 41 Fed. 132; and Filter Co. v. Erdrich (C. C.) 98 Fed. 300. Judge Gresham, who delivered the opinion in the earliest case, makes this statement, which meets with substantial approval in the subsequent cases:

"Lager beer, owing to fermentation, contains yeast germs, albuminoids or gluten, and other impurities, which need to be removed without depriving the beer of its carbonic acid gas, also the product of fermentation, before the beer is marketable. Prior to the use of the Stockheim process, the subject of this suit, when beer had reached its proper age it was conveyed from a storage cask to a cask at the bottom of which chips and shavings had been placed for the purpose of attracting and retaining the yeast particles and other extraneous substances. The finer impurities were not, however, thus attracted and precipitated, and, in order to force them to the bottom of the

cask, isinglass, made of fish sounds, a glutinous substance, which, injected at the top, dissolved, and, spreading over the top surface of the beer, gradually sank to the bottom, carrying with it smaller impurities not already attracted there by the chips and shavings. The state of the art, the invention, and its advantages are thus described in the specifications: "The object of this invention is the filtration of beer which contains mechanical impurities, and also carbonic acid gas under pressure. In the filtration of such liquids it is important that the liquid—beer, for example—should be filtered continuously in its passage from the store cask to the keg into which it is drawn for sale, without material loss of the gas contained in the beer, and without material foaming in the keg into which the filtered beer is delivered. The methods in use prior to my invention for clearing beer of the yeast which is produced in it as a product of fermentation have generally involved the use of isinglass, by which the yeasty particles are collected and precipitated to the bottom of the tun or cask containing the beer. Isinglass is, however, costly, and involves a very large annual expenditure where any considerable amount of beer is brewed, and much trouble in preparing for use as a "fining," and it is slow in its operation. Nor are the results entirely satisfactory, as all of the yeasty particles are not thereby removed, but some portion remains, and, yeast being a fungus growth, that which remains propagates more yeast, fermentation continues, and in consequence the beer is apt to become cloudy and spoiled. This result is especially noticeable in beer which is bottled, and intended to be kept for some time, either for export or domestic use. In mechanical filtration, variations in the supply of beer to the filter, and in the speed with which the filtered beer is discharged into the keg, permit the carbonic acid gas generated to escape in considerable quantities while the beer is passing through the filter, and, the beer having lost its carbonic acid gas, or a considerable quantity of it, comes out flat and insipid, and is discharged into the keg in a foamy condition, and soon becomes worthless; besides which, the escape of the gas in the filter causes foaming therein, the foam collects upon and clogs the pores of the filtering substance, or the gas permeates the filtering substance, thereby affecting its efficiency as a separator of mechanical impurities, or both results ensue, and thus the operation of the filter is materially retarded, the variations of supply and discharge are increased, and in consequence the filtering substance fails to collect much of the yeast. To modify these results would require frequent changing of the filtering substance, and this would involve, not only expense for filtering material, but considerable loss of beer, and delays in filtering operation. Continuous filtration, without material variation in the speed with which the beer is discharged from the cask, is also important, because, if the speed of the discharge is materially diminished, the accumulated air pressure will burst the cask, unless it is closely watched; and, the cask being usually in a cellar, where neither continuous sunlight nor gaslight is permitted, because either would elevate the temperature of the cellar, such watching is inconvenient. For these reasons, among others, mechanical filtration has not, 1 believe, been generally or successfully practiced by beer brewers before my invention. By my improved method of filtering I dispense entirely with the use of isinglass or other finings, and thus very great economy is secured. The beer is thoroughly clarified; all, or substantially all, of the yeast particles being removed. The operation of filtering is rapid and continuous, without material variation in speed, and without the necessity of changing or cleansing the filtering substances. The carbonic acid gas is substantially preserved in the beer, and the beer comes out of the filter retaining all of its brilliancy and liveliness, ready to be discharged into the keg at the racking-off bench without any danger of subsequent cloudiness or other deterioration due to the filtration, and without having had imparted to it any undesirable taste.'"

Having described the drawings accompanying the specifications, the patentee says:

"In case any air enters the filter, either through the connecting pipes or otherwise, or if any gas escapes from the beer from changes or variations of pressure either on the entrance or discharge side, or by reason of partial clogging of the filter media, or from other cause, the air or gas, as the case

may be, at once ascends to the top of one or other of the gas traps, where, being easily observed, it is, together with the foam thereby caused, allowed to escape through the vent cock, the filtration meanwhile proceeding without any interruption or disturbance. In the drawings Fig. 1, the racking bench is shown as situated on the floor, or on a level above that of the store cask; and this is the arrangement, I believe, in most breweries. The result is that the column of beer in the pipe, G, and hose, M, constitutes a back pressure, by which the filter and the traps at the top thereof may be kept completely filled with beer; but in some breweries the racking-off bench is on the same floor or level with the cask. In such a case a back pressure sufficient to keep the gas traps filled with beer should be formed by elevating the hose, M, at a point between the filter and the racking-off bench, a little above the top of the lantern, or by narrowing the capacity of the hose, M, relatively to the capacity of the hose, k, and the air pressure at the cask. As there is always more or less circulation of beer in the lantern, and the lantern being of glass, the beer therein may be conveniently observed, and the quality of the beer passing through the filter—that is, its freedom from impurities—may be known. Of course, if the gas trap is not of lantern construction, a sample of the filtered beer may from time to time be drawn off for observation by means of the vent cock, and the vent cock may from time to time be opened to allow the escape of any air, gas, or foam which may have accumulated in the gas trap; but this is less convenient than to make the trap of lantern construction. The interior of the chambers of the filter may also be so formed as to constitute traps for air, gas, or foam, the vent cocks being placed at their highest points; but such an arrangement is still less desirable."

Having thus described the process and the apparatus in and by which it is conducted, what he claims as new is:

"(1) The process of filtering beer, consisting in drawing the beer to be filtered from the cask under a pressure exceeding atmospheric pressure, conducting the same to and through a filtering apparatus in which that pressure is maintained during the filtering operation, keeping the filtering apparatus full of beer, collecting and carrying off any air entering the filter along with the beer, and gas separating from the beer during the filtering operation, and discharging the filtered beer from the filter under pressure, substantially as hereinbefore set forth. (2) The described process of filtering and keeping beer, which consists in forcing the beer under a pressure exceeding atmospheric pressure from the store cask through a filtering apparatus, and thence to the keg, keeping said apparatus full of beer during the operation, and collecting and carrying off from the beer during its passage from the store cask to the keg air that may be mingled with the beer. and gas that may separate from the beer, substantially as and for the purpose hereinbefore set forth. (3) The process of filtering beer. consisting in drawing the beer from the cask under a pressure exceeding atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, and creating and maintaining a back pressure in the filter, so as to keep the filter full of beer. substantially as described. (4) The process of filtering beer, consisting in drawing the beer from the cask under a pressure exceeding atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, creating and maintaining a back pressure in the filter so as to keep the filter full of beer, and collecting and carrying off from the beer any gas separating from the beer on its way from the store cask to or through the filtering apparatus, substantially as described."

The improvement made by Stockheim was an important one in the brewing art, as is shown not only by the adjudications in the courts, but in the general adoption and use of the Stockheim process for brewing beer in this country. Before Stockheim's process it was customary to clear beer by placing chips and shavings in casks, which tended to precipitate the yeast and other grosser material. A solution

of isinglass was also used for this purpose, intended to carry germs and other impurities to the bottom. The object of Stockheim's process was to avoid to a large extent the use of expensive material for clarifying beer, to shorten the time necessary in the process, and to accomplish this by filtration without the loss of the carbonic acid gas. It is not claimed that the means used by Stockheim in the various stages of this process were new. All the appliances for carrying out the process were old. What Stockheim invented was an improved process of treating beer containing deleterious substances, notably yeast germs, by maintaining pressure on the beer throughout the operations, so as to contain the gas therein while filtering, thereby preserving the gas in the beer, and delivering it into vessels for shipping continuously and in large columns. In this process the air and gas were removed, maintaining the beer in the condition desired by a forward and back pressure, carrying off air and gas collected during the filtering process. This patent having been so frequently examined by the courts, and uniformly sustained, for the purpose of this motion may be regarded as a valid patent, and having the scope and meaning which has been put upon it by the adjudications referred to. While such adjudications may not be binding upon this court, such frequent decisions after protracted litigation are entitled to great weight, and especially when re-enforced by clear and convincing reasoning. It is not claimed that the defendants use the process in a brewery of their own or otherwise, except as they may be regarded as contributory infringers furnishing to brewers filters of their manufacture, to be used by them in combinations which do infringe the process of the patent. If the defendants are selling a filter intended to be used in combinations which, if unlicensed by complainant, would be an infringement of the patent, then they would be infringers, as I understand the rule. This principle is recognized and enforced in the opinion of Judge Taft in the case of Thomson-Houston Electric Co. v. Ohio Brass Co., decided in the circuit court of appeals of this circuit in May, 1897 (26 C. C. A. 107, 80 Fed. 712). The first and second propositions of the syllabus of that case are:

"One who makes and sells one element of a patented combination with the intention and for the purpose of bringing about its use in such a combination, is guilty of contributory infringement, and is equally liable with him who in fact organizes the complete combination."

"One who makes articles which are only adapted to be used in a patented combination, and offers them for sale to the general public, will be presumed to intend the natural consequences of his acts, and will, therefore, be held to intend that they shall be used in the combination of the patent, and an injunction will be granted."

It is unnecessary to notice the numerous cases cited by counsel upon this subject, in view of this decision in this circuit. Applying the principle laid down in the above case, the defendants are infringers if they are making an article adapted to be used with the combination of complainant's patent, offered for sale to the public with the intent and purpose that the mechanism shall be so used. That the defendant company is making filters to be sold and used in breweries where the process is covered by the patent we think is clear. The circulars of defendants show that they claim the right to make and

sell filters to brewers using the process patented. I am of opinion that the filter of defendants, when thus sold, for the purpose above stated, would make defendants contributory infringers. It is true defendants' filter has no apparatus exactly corresponding to the vent cock in Stockheim's patent to allow the escape of air, gas, and foam which accumulate in the gas traps. The filter as made by defendants has what seems to me to answer the same purpose, in valves so located that they can be used as the lantern gas traps in Stockheim's filter are used. Nor do I think the method of operating the defendants' filter as claimed by them would avoid infringement. Defendants claim that in the practical operation of their filter the valve, E, is only opened to let the water with which the filter is first filled wash out such particles of the filtering medium as may be loose in the filter, for the purpose of cleaning out the filter completely from such detached particles of the filtering medium and other foreign substances as may have in any way come into the filter before the filtering of the beer is to take place or begins; and when the column of water coming out of valve, E, shows perfectly clear and free from foreign matter, the valve, E, is closed, and never again opened until after all filtering of beer ceases, and it is desired to again clean the filter. While this may be true, these valves are in place, and capable of use, and. it seems to the court, very convenient for use in the process of filtration. In the Erdrich Case, above cited, Judge Gray held, with reasoning that has great force, that special methods of allowing gas and air to escape are not absolutely essential to the Stockheim process. Be that as it may, I think the valves shown on defendants' filter practically answer the purpose of the same valves shown on the Stockheim filter. Without entering into a detailed comparison, I am of opinion that defendants' filter, as made and advertised and intended to be used in combination with the patented process in question, when sold to persons using the patented process of Stockheim constitutes an infringement of complainant's rights, making defendants contributory infringers.

The matter principally argued on this motion is the effect to be given to the apparatus made and used by one King, of the Continental Brewing Company, of Boston. In view of the weight and authority of prior decisions sustaining the patent, a preliminary injunction could hardly be denied, unless defendants have introduced some new element into the case requiring a different conclusion. This King apparatus is set up for the first time in this case, and because of that fact this court, in considering it, acts upon its own judgment; and the question is, was this prior use more than two years before the application of Stockheim for a patent such as will defeat it by establishing priority of use, thereby depriving Stockheim's invention of novelty? As to this proposition the arguments of counsel and the testimony in the case have been principally directed. Looking at this as a new question, starting with a presumption in favor of the patent, does the King invention show such prior use, and raise such a doubt as to the validity of the patent, that the court should withhold a preliminary injunction? One who asserts the invalidity of a patent for want of novelty must establish his claim by clear and convincing

proofs. It has frequently been said this proof must be beyond any reasonable doubt. Philadelphia Trust, Safe-Deposit & Ins. Co. v. Edison Electric Light Co. of New York, 13 C. C. A. 43, 65 Fed. 551. In Coffin v. Ogden, 18 Wall. 124, 21 L. Ed. 821, the supreme court said: "The burden of proof rests upon him [defendant], and every reasonable doubt should be resolved against him. * * * The law requires not conjecture, but certainty." See, also, Nelson v. Type-Foundry Co. (C. C.) 91 Fed. 418. Certainly the testimony ought to be of such cogent character as will lead the court to the conclusion that the Stockheim patent has been successfully anticipated in the alleged prior public use in the King apparatus. From the testimony it may be fairly said that King undoubtedly adopted in his business in the Continental Brewery at Boston a process of racking off beer in which he used a method of straining the beer after it left the receiving cask, and before it was drawn into the receiving kegs for shipment. In order to anticipate Stockheim's invention, it must be shown that this use was two years and more prior to October 7, 1887, when the application for the patent in suit was filed. It appears in the testimony that probably in May, 1885, King made a strainer into which the beer was forced by pressure from an air pump upon the beer in the cask, and that the beer thus strained was afterwards conducted by a hose to the racking bench, to be drawn into kegs for shipment. King used two metal plates held with flanges secured together, interposing the straining medium between these two plates. At first he used wire gauze about as fine as China silk, and cotton flannel of one or more thicknesses. Subsequently his filtering plates were made stronger and better, more filtering material being used; this change probably being made after Stockheim's application for a patent. Subsequently King substituted for his own invention a Klein filter, later held to be an infringement, after which he abandoned it, and returned to the use of his own filter in a modified form, which he is still using. In 1893 the owners of the Stockheim patent brought suit against King, who answered, and set up, among other things, his own prior use, alleging the discontinuance of the Klein filter. After this answer the complainant filed no replication, and the case was dismissed for want thereof. A long period of time has passed since King put in his apparatus, and the difficulty of witnesses remembering the details of construction after so long a time is inherent, and has frequently been commented upon by the courts. We have in this case testimony independent of the memory of witnesses in the application for a patent which was filed by King upon July 10, 1885. It seems only fair to say that what King therein claimed and described may be regarded as embodying what he had accomplished up to that time. He states that he has invented a new and useful improvement in the process of racking off beer, which he describes as follows:

"In the process of racking off beer at the brewery, as generally practiced, a part of the finings or settlings is liable to be carried from the large casks to the barrels or kegs, thus giving the beer a cloudy appearance, which renders it very objectionable for consumption, and leaves it in an unmarketable condition, and consequently interferes with its ready sale. It is the object of my invention to obviate these objections, and to that end it consists in the employment of a box or casing interposed between the large cask and the

barrel or keg, and connected to the same respectively by means of pipes or tubes. Within and across the center of said casing is secured a screen or strainer through which the beer is forced, and which arrests the finings or settlings, and prevents their passing into the barrels; thus leaving the beer in a clarified and merchantable condition."

Drawings are attached, which show casings with flanges secured together, and containing fine material answering the purpose of screens, with openings in the casings for the insertion of a pipe or tube leading to the cask to be racked off. "My invention," says King, "is more especially adapted for use in racking off lager beer, which is now manufactured and sold in large quantities. In filling the barrels and kegs directly from a large cask, a considerable quantity of foam is evolved, which, in my improvement, is in a great measure prevented." He claims:

"In an apparatus for racking off beer, the casing, A, A', provided with the openings, B. B', in combination with a screen, C, secured between the flanges, a, a', as and for the purpose set forth."

This application Mr. King suffered to remain in the patent office, without undertaking to press it to issue, until time had run against his application; and no letters patent were ever issued to him for this invention. It will be observed that what he claims to accomplish is by means of a screen or strainer through which the beer is forced in order to arrest the finings or settlings. If he had discovered the principle involved in the Stockheim patent, he makes no mention of it. It is not described so that at the expiration of his letters patent it could become public property. The important element of removing the yeast germs, keeping the filter constantly filled, and keeping the gas by back pressure, is not mentioned or claimed by King. Assuming the operation of this back pressure could be obtained by his process, this feature, which is so important a part of the Stockheim patent, is not disclosed. It is possible in the King process back pressure may be obtained, although the inventor makes no mention of the principle involved. We do not understand that one who discovers and applies an important principle is to be deprived of his invention because it might have been developed in a prior process invented or used by others. This question was before Judge Gray in Filter Co. v. Erdrich, supra, and he said:

"As we think has been shown, certain steps of the process (as, for instance, the discharge of gas and air after the filtering operation has been going on) may not be necessary to the successful operation of the process; but the condition just described, of keeping the filter full after the preliminary expulsion of gas, by forward and back pressure, is a condition absolutely essential to the process, however practiced, and is an end aimed at in the other steps of the process. This leading thought of the inventor, however obvious it may now seem, entered into no other filtering device, so far as the evidence discloses,—at least in such fashion that its importance as a governing condition of the filtering operation might be understood. That this condition should have existed by accident in any process other than Stockheim's, or have been produced without its importance being recognized and proclaimed, cannot affect Stockheim's claim. It may well have been that, before the Stockheim process was explained, some one may have filtered highly charged beer under pressure successfully; the filter having been kept full of beer the while. But, so far as the evidence discloses, no one recognized that as the essential condition of a successful operation, or explained its function as a step in the process. One who accomplishes a result by a process which is only partially

or not at all understood by him has invented nothing, and cannot deprive another, who afterwards discovers and proclaims the true principle of the operation, of the rights of an inventor."

In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, the court said:

"It is not sufficient, in order to constitute an anticipation of a patented invention, that the device relied upon might, by modification, be made to accomplish the function performed by the invention, if it were not designed by its maker, nor adapted, nor actually used for the performance of such function."

It seems clear that, if King had accomplished the very important step which is involved in the Stockheim process, he would have described and claimed it, and certainly not have suffered his rights to lapse by not pressing his invention to a successful issue. The process covered by the Stockheim patent is not shown or suggested in King's application any further than above stated. Had King believed that his invention made this important progress, he certainly would have protected himself by a fuller description of his invention, and taken prompt action to realize the benefit thereof. King seems to have contemplated an apparatus which would arrest the finings or settlings liable to be carried from the large cask to the keg. He seems to have had no conception of a process which would arrest the yeast germs and other impurities, and maintain back pressure upon the beer in the process of filtration and delivering it at the racking bench in a solid stream. There is testimony in the case tending to show that at least in 1885 the King apparatus was regarded only as a straining process. In comparing the specification and claim of his application with the ample statements of the prior art, the objects to be obtained, and the process sought to be secured to the inventor in the Stockheim patent, it is evident that the two inventors had not the same thing in mind. Believing from the testimony that King had no more in 1885 than is shown in his application, and that he does not therein show any invention which would anticipate, if publicly used, the Stockheim patent, it seems to me there is nothing in this case to warrant a different conclusion from that which has been reached by other courts which have passed upon this patent. If the Stockheim patent was only for a filter, it may be that such changes as would be necessary to adapt the King apparatus to the one shown and described in the Stockheim patent would be mere changes of degree, not involving invention, being merely mechanical changes which persons skilled in the art could make. But it must be borne in mind Stockheim's invention is for a process. This process, I am of opinion, is not anticipated by that of King. This question has been fully developed in affidavits and argued by counsel. I think the complainant is entitled to a preliminary injunction.