LOEW FILTER CO. et al. v. GERMAN-AMERICAN FILTER CO. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1901.)

No. 905.

1. PATENTS—CONTRIBUTORY INFRINGEMENT—PATENTED PROCESS.

One who manufactures and sells an article adapted to and intended for no other use than that of practicing a patented process contributes to the infringement by the users, and stands on the same ground as to liability.[1]

2. SAME—VALIDITY—PROOF OF PRIOR USE.

Strict and convincing proof is required of a prior use set up for the purpose of defeating a patent, especially when the invention has been a long time in general use, and has several times been through the ordeal of contested litigation.

3. SAME—PRELIMINARY INJUNCTION—REVIEW ON APPEAL.

An order granting a preliminary injunction against infringement will not be reversed on appeal unless it clearly appears that the court below has fallen into a misapprehension respecting the facts or law of the case in a matter vital to the issue.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

This is a suit in equity upon a bill filed by the German-American Filter Company of New York, as assignee of Heinrich Stockheim, complaining of the infringement by the appellants, the Loew Filter Company and Charles H. Loew, its secretary and treasurer, of patent No. 378,379, issued to Stock-

---

[1] Contributory infringement of patents, see note to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485.

heim February 21, 1888, for a process for filtering beer. The bill charged the defendants with manufacturing and selling the apparatus employed by brewers in filtering beer, according to the process for which the Stockheim patent was granted, and thereby contributing to the infringement by the brewers. Upon the filing of the bill and supporting affidavits the appellee moved for a preliminary injunction restraining the appellants from manufacturing and selling the apparatus which was alleged to constitute the contributory infringement complained of. The defendants, upon the hearing of the motion, submitted affidavits for the purpose of showing a prior use by other parties of the Stockheim invention for more than two years preceding the date thereof. The judge presiding at the circuit granted the injunction (103 Fed. 303), and the defendants appealed.

Wm. Raymond Baird and Francis C. McMillin, for appellants.
Wm. A. Jenner, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

SEVERENS, Circuit Judge (after stating the facts). It would seem clear enough that the judge who granted this injunction made no mistake in holding that the making and selling these filters, adapted to and intended, as they were, for, no other use than filter-. ing beer or similar fluids, should be held as contributing to such use by brewers, and as standing on the same liability as the parties actually using them. A similar question has been before us on former occasions where like circumstances existed, and the rule just indicated was recognized and applied. Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 288, 35 L. R. A. 728; Edison Electric Light Co. v. Peninsular Light, Power & Heat Co. (C. C.) 95 Fed. 669, affirmed in 43 C. C. A. 479, 101 Fed. 831. And see, also, Thomson-Houston Electric Co. v. Kelsey Electric Ry. Specialty Co., 22 C. C. A. 1, 75 Fed. 1005.

The important question in the case, however, and the one upon which the case, in all probability, must ultimately turn, arises upon the ground taken by the defense that the Stockheim invention was anticipated by a prior public use of a process intended for a like purpose by Charles A. King, of Boston, Mass., commencing in May, 1885, and continued, with some modifications, and perhaps some interruption, until the commencement of the present suit. The process of the Stockheim patent consists in forcing beer from the "chip tank," as it is called, under a pressure greater than atmospheric pressure, through a pipe to and through a filter composed of material sufficiently porous to allow the beer to filter through it, and yet of sufficiently close texture to arrest the visible substances floating in the beer and, to a considerable extent, the yeast germs thus far passing towards the storage cask: From thence the beer was forced by the same motive power and under like pressure through another pipe and into the storage cask. The filter was provided with a vent, which could be opened to allow the escape of foam and the escaping gases when they should accumulate in the filter. The purpose of the process was to clear the beer of objectionable substances, and at the same time carry the beer into the storage casks under a pressure which would prevent, as much as.

possible, the escape from the beer of carbonic acid gas, which contributes to a large extent to its sprightliness and flavor. The prior use of King's process, claimed by the defendants to be substantially the same in principle as that of Stockheim's, is testified to by King himself, the owner of the brewery in which it was used, and the mechanical engineer of the same brewery, with some corroborating circumstances. Their testimony is to some extent (we do not undertake to say how far) contradicted by the affidavits of others produced by the appellee. The process which King is said to have employed consisted in forcing the beer from the chip tank through a pipe, and from that through a strainer or screen composed of one or more of the same materials as those used by Stockheim, and thence through a pipe to the storage cask; all being done, as it is claimed, under a pressure sufficient to prevent the escape of the carbonic acid gas contained in the beer. It is claimed, also, that at one period of the use a vent was given to the filter for the same purpose as in the Stockheim patent. The Stockheim patent has been sustained in former suits,—by Judge Gresham in Uhlmann v. Brewing Co. (C. C.) 41 Fed. 132; by Judge Dallas in Same v. Brewing Co. (C. C.) 53 Fed. 485; and by Judge Gray in Filter Co. v. Erdrich (C. C.) 98 Fed. 300. But it appears that in none of the former litigation involving the validity of the patent was the prior use by King shown by the evidence. The courts uniformly require strict and convincing proof of a prior use thus set up for the purpose of defeating a patent, and especially when the invention has been a long time in general use, and has several times been through the ordeal of contested litigation. We have repeatedly held that an order granting an injunction will not be reversed on appeal unless it clearly appears that the court below has fallen into a misapprehension respecting the facts or law of the case in a matter vital to the issue. Duplex Printing-Press Co. v. Campbell Printing-Press & Mfg. Co., 16 C. C. A. 220, 69 Fed. 250; Thompson v. Nelson, 18 C. C. A. 137, 71 Fed. 339; Proctor & Gamble Co. v. Globe Refining Co., 34 C. C. A. 405, 92 Fed. 357.

In view of the fact that the substance of the controversy rests in the sufficiency of the testimony to establish the substantial identity of the King process with that of the Stockheim patent and the fact of the alleged prior use, we do not deem it expedient to enter upon a discussion of those subjects. The evidence may throw new light upon both of them, and a premature discussion might embarrass the court below upon final hearing, or ourselves if the case should come here on another appeal. We shall therefore content ourselves with saying that, adopting the rule before adverted to as the test by which our action should be governed, we are unable to hold that the circuit court was plainly mistaken in deciding that the prior use of King's process was insufficient, or, if sufficient, that the process was substantially identical in principle with that of the Stockheim patent. We are constrained, however, to modify the order for an injunction to the extent of allowing the appellants, within 10 days after the entry of the order upon the mandate, to give a bond to account for the manufacture and sales made by them

pending the suit, to be conditioned for summary judgment thereon by the court below, and in this suit, for such damages as may hereafter be adjudged to have resulted to the appellee from such manufacture and sales. Such bond is to be approved in amount and in respect to the sureties by the judge of the circuit court. If such bond should not be given, the injunctional order will stand. If the bond is given, the order will be vacated. It is so ordered.