### GERMAN–AMERICAN FILTER CO. OF NEW YORK v. LOEW FILTER & MFG. CO. et al.

(Circuit Court, N. D. Ohio, E. D. July 5, 1907.)

No. 6,029.

PATENTS—ANTICIPATION—FILTERING PROCESS FOR BEER.

The Stockheim patent, No. 378,379, for a process of filtering beer when drawn off from the store cask into the keg or other selling receptacle, the essential feature of the invention being to prevent foaming in the filter by means of forward and back pressure and to keep the filter at all time full of solid beer, *held* not anticipated, valid, and infringed.

In Equity. Suit for infringement of letters patent No. 378,379 for a filtering process for beer granted to Heinrich Stockheim February 21, 1888. On final hearing.

For former opinions, see 103 Fed. 303, and 107 Fed. 949, 47 C. C. A. 94.

Hoyt, Dustin & Kelley and Wetmore & Jenner, for complainant.
William R. Baird and Francis C. McMillin, for defendants.

TAYLER, District Judge. This case is before the court on final hearing of the action brought by the complainant seeking an injunction and accounting for infringement of letters patent of the United States No. 378,379, granted February 21, 1888, to Uhlmann and others as assignees of one Stockheim and by them conveyed to the complainant. The defense to the action is a denial of the validity of the patent and of its infringement by the defendants. The bill was filed over seven years ago, and a motion was made for a preliminary injunction, which was heard upon numerous affidavits and elaborate argument by Judge, now Justice, Day, who allowed the motion. The case on that hearing is reported in 103 Fed. 303. On appeal to the Circuit Court of Appeals the decision of the Circuit Court was affirmed, but the order was modified so as to permit the injunction to be dissolved upon giving a bond conditioned for summary judgment thereon by the court below, and in this suit, for such damages as might thereafter be adjudged to have resulted to the complainant. The case on that hearing is reported in 107 Fed. 949, 47 C. C. A. 94; the decision

being rendered on March 5, 1901. Thereafter a large amount of testimony was taken in various parts of the country, bearing chiefly on the claim of alleged prior use and publication of the process covered by the patent in suit. In view of the published decisions respecting this patent, to which reference will be hereafter made, no fuller description of the process covered by the patent will be given than is necessary to make clear this opinion. Reference may be had to the decisions as reported for a fuller account than it is necessary to give here of the process of filtering beer and of this and related patents.

It is sufficient for our present purpose to give the following description:

Prior to the time when Stockheim patented his process for filtering beer great difficulty had been experienced by brewers all over the world in so cleansing and purifying beer as to remove from it all deleterious substances which were held in solution or otherwise, to make it bright and clear, and to preserve in it the carbonic acid gas, without which the beer would be flat and unmerchantable. Much labor and ingenuity and a large amount of money had been spent in the effort to perfectly clarify and purify beer. The result was that while, measured by present results, no practical success seems to have been attained, many, if not all, of the steps which were combined in the Stockheim process and described in his patent were made use of. So it came about that in 1887 Stockheim, a citizen of Germany, filed his application for a patent for a process of filtering and refining beer, which resulted in the patent in suit, granted February 21, 1888. Confining ourselves to the processes of filtration only so far as they are involved in the present inquiry, we discover that it was necessary to conduct the beer from what we may call the storage cask through the filter into the cask or bottle which was to be sold so that the contained deleterious substances should be removed, the carbonic acid gas remain, and the beer be discharged into the selling vessel without foaming. Stockheim claims to have conceived the idea that this result could be successfully accomplished by keeping the filter full of solid beer by two operations: First, the maintenance in the filter of an adequate pressure above that of the atmosphere; and, second, the absence in the filter of all free surfaces of air, gas, or foam, by the removal of the same whenever necessary, and the maintenance of back pressure, pressure in the filter, and forward pressure, or pressure on the supply cask, so as to prevent the recurrence of such free surfaces. It is claimed by the complainant that until the Stockheim process there was no known method by which beer could be commercially filtered without the development in the filter of air or gas from free surfaces due to the different resistance offered by the filtering medium to air, to gas, and to the liquid beer. The substance of Stockheim's process, whether novel or anticipated, was to prevent the foaming of the beer in the filter—the critical place in the system—where the gas is most likely to separate from the beer, and deliver therefrom foamless beer into the keg or bottle. This he sought to accomplish by maintaining on the beer in the storage cask a pressure which would keep the gas in the beer and force the beer through the system, by collecting and discharging, as an initial step, any air or gas that might enter,

or gas that might be freed in the filter, and carrying it off from the line of discharge by separate devices, by maintaining a back pressure, as well as a forward pressure, upon the beer in the filter so as to keep the filter full of solid beer, thereby preventing the formation of gas or air spaces, and when, nevertheless, these spaces have formed to carry off the collected gas or air before it has had an opportunity to work mischief, and thus restore the condition of the filter expressed by the words "to keep the filter full of beer," as distinguished from beer and separated gas or foam. The definition of the phrase "to keep the filter full of beer" is important. As related to the most persuasive argument made against the validity of the patent, it is controlling. If we define the expression as meaning that condition of the contents of the filter which we describe as solid beer without any foam or air or disengaged or separated gas, we have a very different conception from that which we ordinarily have when we speak of a vessel being "full" of a liquid. As to some of the devices which are cited as anticipations of the Stockheim patent, it is claimed that in their operation the filter must have been full of beer, and, if so, there is nothing left to the patent in suit. Undoubtedly some of these prior devices so operated that the filter must have been, while in operation, full of beer; but they were not "full of beer" in the sense in which that expression is used in the Stockheim patent. If they had been, they would probably have been successful. They did not take care of the gas and air which entered the filter with the beer nor of the gas liberated in the filter; and, since they did not do this, the beer foamed at the keg or the filter got out of order.

The patent contains four claims for a process, and they are all directed to the accomplishment of "the filtration of beer in its passage from the store cask to the keg into which it is drawn, without material loss of the gas contained in the beer and without materially foaming in the keg, into which the filtered beer is delivered." Each of the claims describes the drawing of the beer from the storage cask under a pressure exceeding atmospheric pressure, and conducting the same to and through a filtering apparatus in which that pressure is maintained; but this alone would not keep the filter full of beer or suffice to prevent material loss of gas, or avoid foaming at the keg, so that we find the following additional means claimed in the first claim: "Collecting and carrying off any air entering the filter along with the beer, and gas separating from the beer during the filtering operation"; and, in the second claim, "collecting and carrying off from the beer, during its passage from the store cask to the keg, air that may be mingled with the beer, and gas that may separate from the beer"; and, by the third claim, "creating and maintaining a back pressure in the filter, so as to keep the filter full of beer." The fourth claim fairly embodies the other three.

This patent has been so often passed on by the courts that, apart from any question of comity, we might dispose of this case without further inquiry; and this solely because of the fact that the validity of the patent has been so frequently sustained, after full hearing, as to inform all persons interested in the subject, that its status in the courts was established; but it is claimed by the defendants that the chief defense

here is anticipation by prior use and publication, and that a large and conclusive amount of testimony to that effect, which was not before the courts in any of the other cases, is now before this court, and ought to result in a different conclusion.

It is undoubtedly true that the proof in this case, adverse to the validity of the patent, is somewhat stronger than it was in any of the other cases; and it may be true, without at all intimating the propriety of a different finding now, that, if all of the proof now here had been presented to Judge Gresham when he heard the first case in 1889, he might have come to a different conclusion. Whatever else is true, it is undoubted that such rights as the defendants have and such obligations as they have assumed in consequence of the manufacture of the infringing device were all acquired and assumed with knowledge of the fact that the courts had deliberately sustained the validity of the Stockheim patent after full and careful hearing. Yet a fair and full examination of all the additional testimony in this case leads me to the conclusion that, in so far as any prior use has been shown, it is merely cumulative to the proof in the former cases, and is not persuasive, even where it is not wholly weak, inconclusive, and unsatisfactory, as much of it is. It is necessary, in order to understand the case, to make some examination of the facts developed in the prior litigation.

The patent was granted February 21, 1888. On December 16, 1889, Judge Gresham, holding the Circuit Court at Chicago, rendered his decison in the case of Uhlmann et al. v. Bartholomae & Leicht Brewing Company et al., 41 Fed. 132. There is a full description of the patent in this opinion, with a history of the prior art as then developed by the testimony. The opinion in that case, as well as the record, shows that the most important circumstances bearing upon the question of anticipation, to wit, the Enzinger patent of 1878 and the Enzinger pamphlets of 1881 and 1885, were before Judge Gresham and were considered by him. The validity of the patent was upheld by the decision. On January 4, 1893, Circuit Judge Dallas, sitting in the Eastern District of Pennsylvania, rendered his decision in a suit for infringement of the same patent in the case of Uhlmann et al. v. Arnholt & Schaefer Brewing Company (C. C.) 53 Fed. 485. This case was vigorously contested and elaborately argued. All of the testimony in the preceding case was before the court together with other testimony tending to show anticipation. The patent was carefully analyzed and passed upon, and again was held valid. On November 21, 1899, Circuit Judge Gray, sitting in the Circuit Court for the Eastern District of Pennsylvania, rendered a decision in a suit brought for infringement of the same patent in the case of German-American Filter Company of New York v. Erdrich (C. C.) 98 Fed. 300. Again the case was fully tried, ably argued by counsel, and elaborately discussed by the judge in his opinion. New testimony appeared in this case respecting prior use and prior publication. They were all carefully considered, and, as it seems to me, full weight was given to all these additional circumstances, with the result that the patent was again held valid and infringement found. I have had before me the records in these last two cases, and have gone to some pains to go

over them with a view of learning how fully the facts were developed, and especially with a view of determining how important is the new evidence in this case. It is enough to say that every controlling fact in this case appears in both of the Philadelphia cases. The cumulative proof before us now will be hereafter referred to.

In 1900 this suit was commenced. The application for a preliminary injunction was heard on affidavits which set out the substance of all that had been shown in the former cases, together with some additional circumstances showing anticipation. It appears from the opinon rendered by Judge Day (103 Fed. 303) that he gave careful consideration to the patent itself, and especially to what may be called the King anticipation, as evidence of his device then made its first appearance. The preliminary injunction was allowed because the court found the patent valid notwithstanding the claim of anticipation. On appeal to the Circuit Court of Appeals of this circuit the merits of the case were not discussed; but two propositions were laid down: First, that an order granting a preliminary injunction against infringement will not be reversed on appeal unless it clearly appears that the court below has fallen into a misapprehension respecting the facts or the law in the case in a matter vital to the issue; and, second, as applicable to this case, that strict and convincing proof is required of a prior use set up for the purpose of defeating a patent, especially when the invention has been a long time in general use, and has several times been through the ordeal of contested litigation.

Referring now to this new testimony, we discover a large amount of evidence taken respecting the use made in this country prior to the patent in suit of the Enzinger filter at Syracuse, N. Y., Lebanon, Ill., Socorro, N. M., and at other places. Some testimony respecting the use of this filter at Lebanon, Ill., and at Socorro, N. M., was in a former case. It is sufficient to say of all this proof of prior use that it falls far short of the certainty which the law requires, and as expressed by the Circuit Court of Appeals in this very case to which reference has just been made. It seems to me that nothing could be truer or fairer than, as claimed by complainant, that prior to the introduction of the Stockheim process and apparatus the finishing or fining of lager beer by mechanical filtration was never successfully practiced or known in this country, although it was ardently desired and had been frequently attempted. I think it fair to say that we must interpret all of the testimony introduced by the defendants in this case, showing the use of the Enzinger filter at Syracuse, Lebanon, and elsewhere, as having been entirely ineffective to accomplish the purpose which it was thought they would accomplish. Indeed, its use was so meager and its want of success so apparent that the novelty and usefulness of Stockheim's process are only emphasized by this testimony intended to show a prior use. Certainly the use thus made of the Enzinger filter made no impression upon the brewers of this country, and nowhere was it used except in the most trifling and inconsequential way. I am wholly unimpressed by the King filter or by the testimony pertaining to it. King's conception, at best, was vague, dim, and not considered valuable. It may have contained the germ from which the inventive mind could evolve the Stockheim process; but it seems to me to fall

far below the Enzinger device in its usefulness and its suggestiveness. He applied for a patent, but never deemed it of sufficient value to prosecute his application to a conclusion.

Referring to the previous publications made in Germany and Austria, proof of which did not appear in the other cases, it is enough to say that to my mind they, like the King device, do not carry anything like the suggestiveness contained in the Enzinger filter itself as patented and exhibited prior to the Stockheim patent; but, in so far as the Enzinger filter may be said to be an anticipation of the Stockheim process, the question is entirely foreclosed by the careful and constant determination reached by the eminent judges who have already passed upon the question. All of them have had the changes rung on the Enzinger patent from every possible point of view. When we compare the additional testimony in this case with all that was presented to the other judges, we must conclude that it is of slight weight, and wholly without persuasion to accomplish the purpose which defendants' counsel claim for it.

Justly it ought to be said that, when a patent whose validity has been vigorously contested in four separate litigations has been sustained without dissent by four judges such as Gresham, Dallas, Gray, and Day, we might well conclude that its validity was thoroughly established; and, if any security in property rights is to be assured, why should we not so conclude?

As to the question of infringement by the defendants' device, I can see no reason to doubt the claim of the complainant.

A decree may be entered in accordance with this opinion.