LOEW FILTER CO. et al. v. GERMAN-AMERICAN FILTER CO. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. October 16, 1908.)

No. 1,767.

1. TRIAL (§ 105*)—RECEPTION OF EVIDENCE—SECONDARY EVIDENCE—ADMISSION WITHOUT OBJECTION.

Secondary evidence is nevertheless evidence to be considered, if not reasonably objected to.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 265; Dec. Dig. § 105.*]

2. PATENTS (§ 69*)—ANTICIPATION—PRIOR PUBLICATION.

It is not competent to read into a publication relied on as an anticipation of a subsequent patent information which it does not give, nor by expert opinion explain an otherwise uninforming statement by evidence of some apparatus or article not itself competent as an anticipation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 84; Dec. Dig. § 69.*]

3. PATENTS (§ 328*)—INFRINGEMENT—FILTERING PROCESS FOR BEER.

The Stockheim patent, No. 378,379, for a process of filtering beer, held not anticipated, valid, and infringed as to claims 1, 2, and 4. Claim 3 held void for anticipation by a prior publication.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

For opinion below, see 155 Fed. 124.

Wm. R. Baird, for appellants.

W. A. Jenner, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is a bill to restrain infringement of patent No. 378,379, granted February 21, 1888, to Simon and Frederick Uhlman, assignees of Heinrich Stockheim, inventor of a certain "new and useful filtering process for beer." The defenses are that the process had been anticipated and had not been infringed. The Circuit Court found the patent valid and infringed. In a number of prior litigations with other alleged infringers the validity of Stockheim's patent has been sustained against evidence of alleged anticipatory uses or publications. Uhlman et al. v. Bartholomae & Leicht Brewing Co. (C. C.) 41 Fed. 132; Uhlmann et al. v. Arnholdt et al. (C. C.) 53 Fed. 485; German-American Filter Co. v. Erdrich (C. C.) 98 Fed. 300.

After the fermentation of beer is completed, and the beer "finished," it is full of carbonic acid gas under pressure. It also contains yeast and other impurities, and is cloudy in appearance. The problem of the brewer at this stage of manufacture is to clarify his beer by freeing it from all yeast particles and other mechanical impurities and to pass it after such clarification into the receiving or shipping vessels without loss of carbonic acid gas. Turbidity of beer denotes the presence of yeasty particles which will soon set up a secondary fer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mentation, if not removed, and spoil it for use. It also detracts from the appearance of the beer and renders it unsalable. To retain in the beer the gas produced by fermentation is .also essential; for, if there is material loss in filling the shipping kegs, the beer will be flat and undesirable. In passing the beer from the storage or chip cask into the shipping keg, more or less of the absorbed gas is freed by friction, and if it comes in contact with air or gas spaces in the course of such passage the escape of gas is serious. Such a condition produces foam at the keg, and interferes with filling, and causes loss. The great thing which the brewmaster sought was some economical process for filtering his beer while passing from the storage cask to the shipping keg without material loss of gas.

The earlier method of clarification was to place in the storage cask a sufficient quantity of isinglass, which dissolved and formed a thin film which slowly descended from the top of the beer in the cask to the bottom, usually covered with soaked beech chips, conveying with it the yeast germs and other impurities, which would, on settling, adhere to the chips at the bottom. The clear beer was then drawn off from above this layer of chips. This isinglass process was slow. It was expensive, and involved the loss of a considerable remnant of beer at the bottom of the chip cask. Under the old method the beer thus clarified was passed by a hose, usually of one inch diameter, attached to a faucet in the chip cask, which led to the racking-off bench; then it branched into two parts, each of one-half inch diameter. To the end of each branch a piece of flexible tubing, usually made of the gut of an animal, was attached. This gut was inserted into the bung of the shipping vessel nearly to the bottom, and the beer allowed to pour into the keg.

Stockheim was not the first who sought to substitute a mechanical filtration for this isinglass method. One of the first in the field was L. A. Enzinger, a citizen of Worms, in Germany. He secured a patent for a filter in both Germany and the United States; his American patent being dated November 12, 1878, issue No. 209,874. The defense of anticipation in the earlier cases involving Stockheim's invention, which have been cited above, as well as in the present case, largely hinges upon whether this Enzinger filter was intended or adapted to the process of Stockheim, and whether it had been successfully operated according to his method prior to his discovery and the grant of his process patent.

Stockheim, after giving some account of the earlier method of filtration by isinglass, and of the slowness and expense of such method, and of the failure of former mechanical methods of filtration because of the loss of gas in passing through the filter, proceeds to describe an apparatus by which he proposed to carry out a method of filtration which would be inexpensive and deliver the beer from the filter to the shipping keg without material foaming or loss of gas. His claims are four in number and are as follows:

1. The process of filtering beer, consisting in drawing the beer to be filtered from the cask under a pressure exceeding atmospheric pressure, conducting the same to and through a filtering apparatus in which that pressure is maintained during the filtering operation, keeping the filtering apparatus full of

beer, collecting and carrying off any air entering the filter along with the beer and gas separating from the beer during the filtering operation, and discharging the filtered beer from the filter under pressure, substantially as hereinbefore set forth.

2. The described process of filtering and keeping beer, which consists in forcing the beer under a pressure exceeding atmospheric pressure from the store cask through a filtering apparatus and thence to the keg, keeping said apparatus full of beer during the operation, and collecting and carrying off from the beer during its passage from the store cask to the keg air that may be mingled with the beer and gas that may separate from the beer, substantially as and for the purposes hereinbefore set forth.

3. The process of filtering beer, consisting in drawing the beer from the cask under a pressure exceeding ordinary atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, and creating and maintaining a back pressure in the filter, so as to keep the filter full of beer, substantially as described.

4. The process of filtering beer, consisting in drawing the beer from the cask under a pressure exceeding ordinary atmospheric pressure, forcing the beer under said pressure through a filter, maintaining that pressure in the filter during the filtering operation, creating and maintaining a back pressure in the filter, so as to keep the filter full of beer and collecting and carrying off from the beer any gas separating from the beer on its way from the store cask to or through the filtering apparatus, substantially as described.

That his process was a great practical success the evidence makes plain. That it was adopted and used by a great proportion of the large breweries, and that it superseded in a large measure prior methods and apparatus, is established. The single question is whether, when he conceived his method, it had already been publicly used or described in publications open to the public, and therefore anticipated. We must bear in mind that the Enzinger patent of 1878 was for a filter, an apparatus, and is not for a process, and that while Stockheim, as the statute required, points out a form of apparatus adapted to carry out his process, his patent is for a process, and not for the apparatus. A process patent can only be anticipated by showing an earlier similar process. It is not enough to show that the Enzinger filter might have been operated according to the process of Stockheim, but that his process had been actually used in its practical operation, or that the character of the structure was such as to plainly indicate to one called upon to operate it that its intended mode of operation was similar to that now claimed by Stockheim. Carnegie Steel Company v. Cambria Iron Company, 185 U. S. 421–425, 22 Sup. Ct. 698, 46 L. Ed. 968.

This Enzinger filter came to be used in some breweries in connection with an apparatus, also devised by Enzinger and covered by a German patent of 1880, which he called an "isobarometric filling apparatus for liquids containing gas," by means of compressed air conveyed through a hose connected both with the chip cask and the receiving or shipping keg, thus providing a forward pressure on one side of the filter to keep absorbed gas from escaping there and a back pressure on the other side for the purpose of keeping gas from escaping from the filtered beer. The forward and back pressure being the same, any flow of beer through the filter was due to the hydrostatic pressure consequent upon placing the chip cask slightly above the shipping keg. It will be observed that this patent of 1880 did not provide

for any filtering of the beer to be racked off. Neither did his prior patent of 1878 provide for either forward or backward pressure in connection with his filter.

But in 1880 an article appeared in a German brewing paper, the Bier Brauer, which described a method of operating this isobaro-metric apparatus in which the writer proposed to interpose in the line of hose between the chip cask and the racking bench an Enzinger filter. In 1882 another article, by Conrad Zimmer, appeared in a brewers' journal published at Worms, which appellants contend points out a method of operating Enzinger's filter in combination with a forward and backward pressure, which is the process of Stockheim, and there-fore an anticipation by a publication accessible to the general public. After commenting upon the slowness and extravagance of the old isinglass method of filtration and the great economy of mechanical filtration, Zimmer proceeds to say of the Enzinger apparatus, evi-dently including his equal pressure apparatus with his filter, that "it ought to be received by the brewers as a certain means for clarifying turbid beer." He then proceeds to state "how the filter should be put up and used in practice." The parts of this article which are of im-portance in dealing with it as an anticipation are as follows:

"The foaming caused by the filter when filtering the beer into kegs is due either to the fact that most brewers do not use the somewhat inconvenient racking apparatus, or do not follow the directions given by the inventor. The filter is constructed according to settled fundamental principles; for instance, when racking off with the filter certain laws have to be regarded, and these the brewer must obey. In order to prevent the escaping of carbonic acid gas, back pressure must be applied, which is brought about through the isobarometric apparatus. If the work with the apparatus is too inconvenient, one needs only to raise his old racking apparatus so high that between the keg to be filled and the tap hole of the storage cask there is a difference of at least four meters. This difference in height can be increased to from six to seven meters without causing any trouble or making the pressure in the stor-age cask too high, as this pressure can be regulated from the air chamber through a safety blow-off on such chamber. Besides this, a cooling apparatus can be placed between the storage cask and the filter, so that the beer is cool-ed off with ice or a cooling mixture to 0 deg. R., or even lower, whereby the carbonic acid gas is completely retained, and the gluten is perfectly separated. Aside from the cooling last mentioned, the carbonic acid is, so to say, by the back pressure pressed into the beer, and no escaping of carbonic acid gas is to be feared. But in this connection it is to be remarked that no air should be allowed to pass into the filter, and, as is well known, a special contrivance is provided to prevent this. If there is the proper back pressure, and there is no air in the apparatus, the beer reaches the shipping vessel without a trace of foam. The escape of carbonic acid gas can only occur through the admission of atmospheric air, and the shipping vessel, as soon as it is filled, should be securely sealed."

The third claim of Stockheim consists of the following steps: First, "drawing the beer from the cask under a pressure exceeding ordinary atmospheric pressure"; second, "forcing the beer under said pres-sure through a filter"; third, "maintaining that pressure in the filter during the filtering operation"; and, fourth, "creating and maintain-ing a back pressure in the filter, so as to keep the filter full of beer." That the first three steps are anticipated by Zimmer is evident. The fourth step furnishes the controversy. The appellees say that Zimmer does not require that the filter shall be kept full of beer, and that this

condition is the key of Stockheim's process. Was this step taught or realized by the Zimmer article? True, Zimmer does not say in so many words that back pressure is to be maintained "so as to keep the filter full of beer." Neither does Stockheim in this claim make it a condition, in so many words, that air or gas originally in the filtering apparatus, or which enters or is disengaged during the operation, shall be vented. He does not deal with either air or free gas in the filter at all, except as the venting and exclusion of air or gas is implied by the fact that the filter is full of beer, meaning, of course, beer free from foam. But a similar implication must apply to Zimmer's method; for he, in express terms, makes the absence of air in the filter a condition upon which, in connection with "the proper back pressure," will secure beer free from foam at the receiving keg. Beer free from foam at the keg after filtration implies that the filter has been kept free from air, for otherwise it would not be free from foam. The one statement, to say the least, is the equivalent of the other; the advantage being with Stockheim, who does not leave to implication so necessary a step as the exclusion of air or free gas. Counsel speak of "air or gas spaces" as if vacuums. The distinction is not tangible. If there is an implied absence of air or gas, there is an implied absence of "spaces" which might be filled with air or gas. If, therefore, Stockheim's third claim is a practical process and a valid claim, without requiring definitely the collection and venting of air or gas in the filter when the operation begins, or which enters or is liberated during the operation, it was anticipated by Zimmer and is void.

The other claims of the Stockheim process include, in addition to the steps of the third claim, the collecting and carrying off from the beer of air in the filter and gas which may separate from the beer during the operation. His specifications and drawings show an apparatus adapted to vent air and gas, thus providing a venting arrangement which prevents such air or gas from being forced through the filtering material and out with the filtered beer at the keg.

We are not satisfied that the Enzinger apparatus was designed or adapted to carry out Stockheim's process, or ever so practically used. For the filtration of aërated waters he did provide a conduit by which disengaged gas on one side of his filter might be carried over to the other for reabsorption by the water as it came in on the inlet side. The try cocks referred to were evidently never designed, adapted, or used to vent collected air or gas. Enzinger in his later patent of 1888, being patent No. 393,633, concedes the necessity for more adequate means than he had theretofore employed for allowing the air to escape contained in the apparatus and the aptness of the filter sheets to be torn by forcing air or gas through them. The objection that the later patent is not in evidence comes too late. Prof. Chandler was examined about this patent, and sets out in his answer those parts of the specification of his 1888 patent containing this admission. No objection was made below, and it is too late to object now that this was not the best evidence of the contents of the patent. Secondary evidence is nevertheless evidence if not seasonably objected to. Schlemmer v. Buffalo, etc., Ry. Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681.

There is evidence as to a prior use of Enzinger's filter at two small breweries and for a short time. The practice seems to have been to expel the air in the filter by a preliminary run of either water or beer, forcing the air out through the filter paper before beginning the regular operation. To force either air or gas out of the filter by means of the pressure of water or beer behind it must have been injurious to the filtering material, paper in the instances relied upon, causing it to tear or channel, thus requiring frequent stoppage for repairs and permitting the passing of imperfectly filtered beer by reason of the injury to the filter paper. The evidence that this process was practical and successful is not of the character necessary to destroy this patent. Neither did this preliminary operation make any provision for getting rid of air which might subsequently enter or gas which might become disengaged during the later operation. Such air and such gas must be forced through the filter material and cause foam there and at the keg. The practice was not the process of Stockheim, who, as a condition in the first, second, and fourth claims, makes the "collection" and venting of air and gas a step in his method. To force it through the filter material and out with the filtered beer was not Stockheim's method.

Neither do we think the Zimmer article an anticipation of Stockheim's first, second, or fourth claim. While Zimmer points out that "no air should be allowed to pass into the filter," and that a delivery of foamless beer from the outlet side of the filter is dependent upon there being "no air in the apparatus" and a proper back pressure, yet he does not disclose how the admission of air is to be prevented, or how air which may be originally in the apparatus, or which may enter during the operation, or gas disengaged during the operation, is to be expelled without passing through the filter, to the injury of the filter material as well as to the beer. Zimmer seems to refer chiefly to preventing the admission of air to the apparatus, meaning, probably, during the operation of filtering. Touching such admissions, he refers to the use of a well-known "special contrivance provided to prevent this." What this contrivance was, or how it operated, he does not tell us, nor have we any means of knowing. Prof. Mabery, an expert for appellants, gives it as his opinion that by this reference to the exclusion of atmospheric air he meant the "luft sammler," or air collector, which is attached to the large filter used by the Hammels at Socorro and described in Michel Brewery Book. The contrivance referred to by Zimmer can only be shown by evidence that it was either in known common use or had been described by some publication of which the general public must take notice. The Zimmer publication must be given effect as an anticipation only to the extent that it actually gave to the public information of a process of filtration. It is not competent to read into such a publication information which it does not give, or by expert opinion explain an otherwise uninforming statement by evidence of some apparatus or article not itself competent as an anticipation. Badische Anilin & Soda Fabrik v. Kalle & Co., 104 Fed. 802, 44 C. C. A. 201. The Michel Brewery Book referred to by Mabery is in evidence; but we think the date of its publication is not satisfactorily shown to have been before the actual date of Stockheim's invention— February, 1887.

Stockheim's process requires as a step the collecting and carrying off of air or disengaged gas. This is not taught by Zimmer, and the efforts made by such brewers as used the Enzinger filter according to Zimmer's instructions seem to have been such as we have mentioned before, namely, a preliminary run of beer to force the air in the apparatus through the filter and out at the racking bench as foam, filling only when the foam had ceased, or by a preliminary washing out with water, the water in turn being forced through by beer. In such case there was likely to be more or less injury to the filtering material, bad filtration, and much waste of time and beer. In none of the alleged prior uses, according to Zimmer, was there any method of collecting and venting air or disengaged gas which might enter the filter after such preliminary run.

An apparatus made and used by one King at a brewery has been relied upon as a prior use. This apparatus was relied upon in resisting the application for a preliminary injunction under the present bill. The opinion in the case was rendered by Mr. Justice (then Judge) Day. The opinion largely deals with this alleged prior use and is found in 103 Fed. 303. He thought the King apparatus a strainer, and so King called it, rather than a filter. He thought, although there was evidence that from time to time King increased his filtering material, that the evidence that his strainer anticipated or was adapted to carry out Stockheim's process was not so clear and cogent as required by the rule. There was an appeal to this court from the decree allowing an injunction pendente lite, but the order was affirmed. 107 Fed. 949, 47 C. C. A. 94. The evidence in this case, as now made up, leaves the practical character as well as the mode of King's operation in so much doubt that we find no reason for disturbing the view of the court below that prior use by King has not been made out.

The decree will be modified, so as to hold the third claim of Stockheim invalid; otherwise, the decree is affirmed.

The vertical air passage, E, of the filter made by the defendants, is adapted to and intended to permit the escape of air or gas, as well as water used in the preliminary operation of the Loew filter, and enables the defendants to collect and vent the air in the filter as well as the gas which may become discharged during the process. The device, therefore, infringes claims 1, 2, and 4.

The decree of the court below will be affirmed, except as to the third claim, which we think invalid. Costs of this appeal will be paid as follows: One-fourth by appellees, and remainder by appellants. Remanded for further proceedings not inconsistent with this opinion.