## SCOVILL MFG. CO. v. SATLER.

District Court, D. Connecticut. August 27, 1927.

No. 1850.

1. Patents ⊚⇒328—Lowenstein 1,258,423 for variable electrical condenser, held not anticipated, valid, and infringed.

Lowenstein patent, No. 1,258,423, for variable electrical condenser for use in radio work, *held* not anticipated and valid, and claims 1, 2, 3, and 4 *held* infringed.

2. Patents ⊚⇒118—Patent for mechanical or electrical device is not invalid because claims are in mathematical terms.

Patent for mechanical or electrical device is not invalid because claims are formulated in mathematical terms.

3. Patents ⊚⇒99—Disclosure is sufficient if full enough to be understood by those skilled in the art.

Disclosure is sufficient if so full, clear, and exact as to be effectively understood by those skilled in the art.

4. Patents ⊚⇒64, 68—Prior patent or publication is anticipation only for what it actually communicates.

Prior patent or publication is anticipation only for what it actually communicates to the public within its four corners.

5. Patents ⊚⇒73—Foreign patent is not anticipation of United States patent unless published prior to invention of latter.

Foreign patent is not anticipation of United States patent unless published prior to the invention of the latter.

6. Patents ⊚⇒112(3)—Patent is prima facie evidence of utility.

Patent is prima facie evidence of utility, and doubts on that question should be resolved against infringers.

7. Patents ⊚⇒49—Defense of nonutility can only be sustained by proof of total incapacity to do anything claimed.

Defense of nonutility can only be sustained by proof of total incapacity of invention to do anything claimed for it.

In Equity. Suit by the Scovill Manufacturing Company against Joseph Satler, doing business as the Eagle Radio Company. Decree for complainant.

James Q. Rice, M. C. Massie, and H. M. Humason, all of New York City, for plaintiff.

Robert Starr Allyn and Philip S. McLean, both of New York City, and Arthur L. Shipman, of Hartford, Conn., for defendant.

THOMAS, District Judge. On an application filed August 10, 1916, patent No. 1,258,423 was issued to Fritz Lowenstein on March 5, 1918. By mesne assignment the plaintiff corporation acquired title on November 15, 1924. The application of the patent in suit is a division of an earlier application serial No. 569,325, filed by Lowenstein on June 28, 1910. The bill charges infringement, and the defendant pleads invalidity and noninfringement.

[1] The invention of the patent in suit relates to variable condensers adapted for use in radio or wireless work. Broadly defined, a condenser comprises a plurality of surfaces insulated from each other, which afford an area on which an electrical charge is stored. The invention of the patent in suit is more particularly directed to that type of electrical condenser which comprises a set of stationary spaced metal plates and a series of movable spaced metal plates; the latter being adapted to be interspersed to a greater or less degree between the stationary plates to effect changes in the capacity of the condenser.

In the most commonly known variable electrical condensers of the type mentioned, both sets of plates are semicircular; the stationary plates being separated from each other a uniform distance, while the movable plates, which are mounted on a rotatable shaft, are also separated a uniform distance from each other in absolute parallelism. The layers of air between juxtaposed surfaces of the plates constitute the insulating medium or dielectric of the condenser. The dielectric prevents an electrical charge which is collected on the juxtaposed surfaces from jumping across and thus short-circuiting and rendering the condenser useless. The ability of a condenser to store electrical charges is known as capacity, which is measured in micro-microfarads, which in turn is one-millionth of a millionth of a farad; the farad being a very large unit. The capacity of a condenser depends directly on its area, so that area and capacity are equivalents in speaking of condensers.

In the condenser just described, the change in area of the movable plates active between the stationary plates is always the same for equal angular movements of the shaft, with the result that for a given angular movement of the shaft there will be the same increase or decrease of capacity throughout the range of movement of the movable plates, no matter where that movement may be made. The movable plates turn through an angle of 180°. In other words, this variable condenser is so designed that equal angular movements or displacements of the movable plates within the working range of the in-

strument produce unequal percentage variations in capacity.

The main object of the invention described in the patent in suit is to so design the instrument, for a purpose hereinafter described, that a given angular displacement of the movable plates produces substantially the same percentage change in capacity at any point within the range of the instrument. The condenser described in the patent in suit includes, preferably, a set of semicircular stationary condenser plates 14, supported in parallel relation by rods 15, which depend from a cover plate and are clamped thereto by nuts 16 and 17. The stationary condenser plates are uniformly spaced apart by collars 18. The parallel movable condenser plates 21ᵃ are secured to a central vertical shaft 22, which is supported at its lower end on a pivot 23 and is held at its upper end in a bearing 24 in the cover plate. Spacing collars 25 are provided to maintain the plates 21ᵃ the proper distance apart, and they are securely clamped in position between nuts 26 and 27. The relative positions of the fixed or stationary plates and the movable plates are such that, when the central shaft is turned, the movable plates enter the spaces between the fixed plates. The movable plates, with the exception of five at the top of the set which are of equal size and a little more than semicircular, are cut off at angles which are progressively greater from the top downward. As a result, the edges of the movable set of plates are arranged in stoplike fashion, so that the movable plates enter successively between the stationary plates as the shaft is turned. The proportioning of the plates and their arrangement is such that the capacity of the condenser is variable, following substantially the law of geometrical progression or in accordance with a logarithmic law fully set forth in the specification of the patent in suit. It is due to such proportioning and arrangement of the plates that a given angular displacement of the movable plates produces substantially the same percentage changes in capacity at any point within the range of the instrument and that the change in capacity is much more gradual than in a condenser where both sets of plates are semicircular.

For the purpose of understanding the invention described and claimed in the patent in suit, it is sufficient to note that the band of frequencies assigned to various radio broadcasting stations in the United States is from 500 kilocycles to 1500 kilocycles, and that the difference between the frequencies of successive stations in the United States is assumed to be 10 kilocycles so as to prevent the sendings of the various broadcasting stations from interfering with each other. Broadly speaking, the condenser is used to separate the frequency of one station from another in tuning, and it is obvious that the frequency on which one broadcasting station operates should not be so near to the frequency of another station that the condenser cannot separate one from the other. Considering now the action of a semicircular plate condenser, it is to be noted that the changes in the amounts of capacity required for a given change of frequency when tuning in that range of the condenser which covers the high frequencies and short wave lengths are much less than when tuning in that range of the condenser which covers the long wave lengths and low frequencies. If it is assumed that the movable plates are fully within the stationary plates, the condenser is then in condition to give the greatest amount of capacity. Then it may be assumed that we are tuning for a frequency of, say, 500 kilocycles, which is the longest wave length and lowest frequency of the band used in the United States. If now we decide to pass from a station operating on a frequency of 500 kilocycles to a station operating on 510 kilocycles, the amount of capacity required will call for a movement of about 7° of the movable plates of this condenser; that is to say, they must move out about 7° from the stationary plates. Assuming that we are tuned for this station at 510 kilocycles, and we now desire to tune for a station at 520 kilocycles, we will not get the required capacity if we move another 7°. As a matter of fact, the turn required will be 6.6°. If after tuning for this station at 520 kilocycles we desire to tune for one at 530 kilocycles, the movement of the movable plates will again be less than the preceding movement. It will be 6.2°. Skipping the intermediate stations in passing from a station at a frequency of 500 kilocycles to one having a frequency of 600 kilocycles, in order to tune for this station, the movable plates of the semicircular plate condenser would have to be moved about 55°. In other words, in tuning for the first ten stations between 500 and 600 kilocycles, 55° of the possible 180° of turn of the movable plates will have been consumed, leaving only 125° for the remaining stations. When we operate this condenser at the other end of its range—that is, the range covering the

short wave lengths and high frequencies—so much of the area of the movable plates has been withdrawn from the stationary plates that only very minute movements of the movable plates can be made to give the required changes in capacity, and this operation becomes increasingly difficult and consequently increasingly ineffective. As a matter of fact, there are only 3° left of the area of the movable plates to be divided among the last ten stations; that is, the stations between 1,400 and 1,500 kilocycles. While the operation of the semicircular plate condenser in the range of short wave lengths and high frequencies is not impossible, it requires such minute movements that its operation is extremely difficult.

The condenser described and claimed in the patent in suit differs from the semicircular plate condenser, because minute movements of the movable condenser plates are not required when tuning in that range of the condenser which covers the short wave lengths and high frequencies, and for the additional reason that it introduces or subtracts the plate area or capacity more evenly throughout its range. This mode of operation and result is obtained by redistributing the plate area of the old semicircular condenser in such a manner that a given angular displacement of the movable plates produces substantially the same percentage change in capacity at any point within the range of the instrument, or throughout the working tuning range.

The plaintiff relies on claims 1, 2, 3, and 4, which read as follows:

"1. A condenser comprising a set of stationary parallel plates suitably spaced apart, and a set of movable parallel plates adapted to enter between the stationary plates, the plates of one of said sets being so formed that a given angular displacement of the movable plates produces substantially the same percentage change in capacity at any point within the range of the instrument.

"2. A condenser comprising a set of stationary parallel plates suitably spaced apart, and a set of movable parallel plates adapted to enter between the stationary plates, the plates of one set being so designed and arranged with respect to those of the other, that movement of the movable plates produces variation of capacity in accordance with the law of geometric progression."

"3. A condenser comprising a set of stationary parallel plates suitably spaced apart, and a set of movable parallel plates adapted to enter between the stationary plates, the plates of the movable set being cut off

in such manner that equal displacements of the movable plates give equal percentage changes in capacity."

"4. A condenser comprising a plurality of relatively moveable plates so dimensioned that the change in capacity produced by a movement of the movable plates is to the movement that produced said change as C is to x in the equation

$$C = a \left[\frac{b}{a}\right]^{\frac{x}{d}}$$

where a, b, and d are constants."

The meaning of claims 1 and 3 is clear from the foregoing discussion of the differences between the ordinary semicircular plate condenser and the improved plate condenser described in the patent in suit. Claim 2, on the other hand, while differing in terms from claims 1 and 3, defines the same improved condenser, if we take into consideration that, in order to produce equal percentage changes in capacity of the improved condenser, the law of geometrical progression must be followed. Claim 4, on the other hand, expresses in different terms and in a mathematical formula the variations in capacity of the improved condenser.

There is no serious dispute on the question of whether the claims relied upon read on the device described in the patent in suit.

The defenses are:

(1) That the 1916 application · is not a proper division of the 1910 application.

(2) That the patent is invalid because of (a) improper subject-matter; (b) insufficient disclosure; (c) anticipation by the prior art; (d) structure disclosed is not useful.

(3) That defendant has not infringed because (a) the Pacent condenser, the defendant's device, is not designed or used as set forth in the patent; (b) the Pacent straight line frequency condenser is not the equivalent of the logarithmic condenser of the patent.

These defenses will be discussed in their order.

1. *The 1916 Application.*—The first defense hinges on the point of whether the 1910 application was sufficiently broad to have carried the claims of the second application. It appears that the original figure 14 of the parent application, consisting of two sheets, is substantially identical with Fig. 1 of the divisional application, and Fig. 13 of the parent application is substantially identical with Fig. 2 of the divisional application. The drawings and the original specifications of the parent application were

full enough to warrant original claim 16 of the parent application, and that claim is substantially the same as claim 4 of the patent in suit. The remaining claims relied upon are also fully warranted by and read on the original disclosure. In Victor Talking Machine Co. v. American Graphophone Co. (C. C. A.) 145 F. 350, it was held that, pending an application for a patent, the specification of which is broad enough to warrant the making of certain claims which are not made, the applicant, instead of inserting such claims by amendment, may, at his election, make them the subject of a new application, which in such case may fairly be considered a continuation of the first. This ruling is apposite to the question under discussion. The Patent Office has admitted Fig. 3 of the patent in suit, although it was not shown in the parent application. I do not find any error in this, and there is no error pointed out by defendant which would make it necessary to overrule the action of the Patent Office. I conclude, therefore, that the 1910 application was sufficiently broad to carry the claims of the patent in suit.

[2] 2 (a). *Invalidity Based on Improper Subject-Matter.*—Defendant attacks the validity of the patent on the ground that it covers improper subject-matter. Counsel claim that the subject-matter is merely a mathematical formula. This point is not well taken, because there can be no more objection to formulating a claim for a mechanical or electrical device in mathematical terms than there would be to write a claim for a chemical compound by means of chemical formulæ. This is done every day in connection with highly important chemical inventions. Moreover, it is only claim 4 of the patent in suit which contains a mathematical formula. The first three claims express the same thought in plain language.

[3] 2 (b). *Insufficient Disclosure.*—Defendant's contention that the patent does not sufficiently disclose the invention needs no serious consideration. The drawings and specification are intelligible at least to those versed in this particular art, and it is to such persons that they are addressed. If a description is sufficiently full, clear, and exact so as to be effectually understood by any person skilled in the subject-matter of the patent, or the art to which it relates, that is all that is required to meet and overcome the defense of insufficient disclosure. Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

2 (c). *Anticipation by the Prior Art.*—We come now to a consideration of the pri-

or art. Defendant relies on a number of patents and printed publications. Several of these may be dismissed without further consideration because they are of a date later than the filing date of the parent application. It will be remembered that the parent application was filed June 28, 1910. Of the prior publications relied upon it appears that Defendant's Exhibit N, Duddell's paper "on a Variable Condenser with a Square Law," was published in December, 1913; Plaintiff's Exhibit 18, Scientific Papers of the Bureau of Standards, No. 235, in which is an article by Frederick A. Kolster describing a direct reading instrument for measuring the logarithmic decrement and wave length of electro-magnetic waves was published in August, 1914; Defendant's Exhibit L, German patent No. 233,462, was published April 10, 1911; Defendant's Exhibit S, French patent No. 424,396 to Girardeau, was published on May 11, 1911. These exhibits, therefore, need not be given further consideration.

[4] It seems that defendant relies mainly on the German patent to Reuthe, No. 208,311, published March 20, 1909. The German patentee proposed to utilize the idea of varying the capacity of a condenser by simultaneously varying the thickness of the dielectric and the active area of the movable plates. There is nothing stated in the specification of this patent which would lead me to believe that the patentee ever thought of or intended to so form, design, or arrange the plates of one set with respect to those of the other that the movement of the movable plates would produce substantially the same percentage change in capacity at any point within the range of the instrument, or produce variations of capacity in accordance with the law of geometric progression or in accordance with the Lowenstein logarithmic law. The decision of the Courts of Appeals of this circuit in Badische Anilin & Soda Fabrik v. Kalle & Co., 104 F. 802, and the decision of the Circuit Court of Appeals for the Sixth Circuit in Loew Filter Co. v. German-American Filter Co., 164 F. 855, seem to be much in point.

Judge Lacombe, on page 808 of the Badische Case, said:

"The 'description in a printed publication' of the statute is to be found within the four corners of such printed publication. Judge Coxe tersely and accurately expresses the law and the reason for it in the following passage:

"'The question is, What does the prior publication say? not what it might have

said, or what it should have said. If prior patents and publications can be reconstructed by extrinsic evidence to fit the exigencies of the case, the inquiry will no longer be confined to what the publication communicates to the public, but it will be transferred to an endeavor to ascertain what its author intended to communicate.'"

And Judge Lurton, speaking for the Circuit Court of Appeals for the Sixth Circuit in the Loew Case on page 860 said:

"The Zimmer publication must be given effect as an anticipation only to the extent that it actually gave to the public information of a process of filtration. It is not competent to read into such a publication information which it does not give, or by expert opinion explain an otherwise uninforming statement by evidence of some apparatus or article not itself competent as an anticipation."

Furthermore, if the light thrown on the art by the Reuthe specification in 1909 was sufficient to enable those skilled in the art to understand the nature and the operation of the invention and to carry it into practical use, it is inconceivable that the device suggested would not have been seized upon in the several years before Lowenstein's patent and embodied in a practical condenser. The fact that it did not so instruct condenser builders justifies the conclusion that the disclosures were not sufficient to instruct them.

United States letters patent No. 627,155, granted to Thomson on June 20, 1899, No. 839,029, granted to Poulsen on December 18, 1906, and No. 892,311, granted to Scheller on June 30, 1908, are considered to have no bearing at all on the issues in the case at bar—in fact less than the German patent to Reuthe.

United States letters patent No. 1,155,-448, granted to Seibt on October 5, 1915, on an application filed October 17, 1911, is not pertinent, because the application was filed later than the Lowenstein parent application. It appears from the record that the application which resulted in the patent in suit and the Seibt application were involved in an interference proceeding in the Patent Office, and that judgment was rendered in favor of Lowenstein.

[5] Defendant has attempted to introduce into evidence Belgian patent No. 222,216, granted to Girardeau on January 31, 1910, which is prior to the filing date of the Lowenstein parent application. This patent was excluded, and, defendant having excepted to the ruling, requested that it be passed up-on in accordance with equity rule 46, which request was granted. Defendant's Exhibit T, Pacent single rotor plate condenser, is to be considered under the same circumstances. There is nothing on record to show the date this Belgian patent was published, and, inasmuch as a foreign patent or other foreign printed publication describing an invention is no defense in a suit on a patent of the United States unless published anterior to the making of an invention or discovery secured by the latter, it cannot be given any consideration. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000. However, a careful study of the specification and the drawings of the Girardeau patent convinces me that it comes under the same ruling as the German patent to Reuthe, supra. Defendant's Exhibit T, admittedly made not earlier than 1923, is evidently used to interpret the patent to Reuthe. This is contrary to law. Loew Filter Co. v. German-American Filter Co., supra.

[6,7] 2 (d). *Utility.*—Defendant further asserts that the structure disclosed by Lowenstein is not useful. It is well settled that a patent is prima facie evidence of utility, and doubts relative to the question should be resolved against infringers. Crown Cork & Seal Co. v. Aluminum Stopper Co. (C. C. A.) 108 F. 845. When this defense is relied upon, the evidence must show a total incapacity of the invention to do anything claimed for it, because neither imperfect operation nor a total failure to perform part of the claimed functions will sustain the defense of want of utility. Seymour v. Marsh, 6 Fish. Pat. Cas. 115, Fed. Cas. No. 12,687. Defendant has not introduced any evidence which meets the test, but plaintiff has introduced theoretical evidence based upon practical use, which convinces me that the Lowenstein condenser produces the result ascribed to it in the patent.

3 (a) and 3 (b). *Noninfringement.*—Under subtitle (a) it is asserted that the Pacent condenser is not designed or used as set forth in the patent in suit, and under subtitle (b) it is asserted that the Pacent straight line frequency condenser is not the equivalent of Lowenstein's logarithmic condenser.

Discussing these in their order, the defendant alleges that the Plaintiff's Exhibits 2 and 3 (the Pacent condenser) are not designed or used as set forth by Lowenstein.

The Pacent condenser comprises a set of stationary plates and a set of movable plates; the plates of each set being placed at equal distances and are in absolute parallelism. Neither set is semicircular in configuration.

The movable plates are substantially of the shape of the movable plates of the condenser described in Plaintiff's Exhibit 18, Scientific Papers of the Bureau of Standards, No. 235. It appears clearly from this exhibit, and also from the arguments of both plaintiff and defendant, that in the condenser used in the Kolster construction the capacity varies in accordance with the law of geometric progression, or, in other words, with the logarithmic law described in the specification of the patent in suit. Hence it follows that, if the defendant's condensers (Plaintiff's Exhibits 2 and 3) are substantially like the condenser used in the direct reading instrument of Kolster, they infringe each one of the four claims in suit.

3 (b). Defendant further alleges that his condensers are "straight line frequency condensers," and were an immediate result of the assignment of wave lengths by the government under ten kilocycle spacing, and were designed to enable the user to plot frequencies on the upright edge of a sheet, and the dial settings on the lower edge, so as to arrange the stations in a straight line uniformly spaced according to the dial readings. It is also alleged by the defendant that the variable condensers sold by him do not follow the logarithmic law of capacity variation claimed in the Lowenstein patent, whether considered with or without the effects of distributed capacity which necessarily accompanies its normal use in a radio set.

There is no doubt in my mind that these points are not well taken, because the record clearly brings out the fact that the movable plates of defendant's condenser are of a spiral configuration like the Kolster plates and are so designed and co-operate in such a manner with the stationary plates that a given angular displacement of the movable plates produces substantially the same percentage change in capacity at any point within the range of the instrument, following the law of geometric progression or the logarithmic law of the patent in suit.

Defendant has attempted to show that the patent in suit is limited to semicircular stationary plates, and, inasmuch as defendant does not use such plates, his condenser does not come within the terms of the claims relied upon by plaintiff. Defendant, however, has evidently overlooked the fact that the claims do not specify semicircular stationary plates and that there is no limitation in the patent which narrows them to semicircular stationary plates. The fact that plaintiff describes "stepped down" movable plates does not necessarily limit the claims to such construction, particularly if it is taken into consideration that the invention of the patent in suit performs a function never performed by any earlier invention and that it enjoys, under the law, all the rights and benefits accruing to a primary invention. There is no question in my mind but defendant's condenser performs the functions of the patented device and in substantially the same way. Therefore the elements of defendant's condensers are equivalents of the corresponding elements of the patent in suit. A change in form does not avoid the infringement of a patent unless the form shown in the patent is necessary to the functions which the patent ascribes to the invention, or unless that form is the distinguishing characteristic of the invention or is essential to its patentability, or unless the patentee specifies a particular form as the means by which the effect of the invention is produced, or otherwise confines himself to a particular form of what he describes. It clearly appears from the record that the form shown in the patent in suit is not necessary to the function which the patent ascribes to the invention. The record also shows that the form of the plates of the condenser described in the patent in suit is not the distinguishing characteristic of the invention, nor is it essential to its patentability, nor is it specified as the only means by which the effect of the invention is produced, nor does the inventor confine himself to that particular form. This being the case, it must be held that defendant's condenser infringes the four claims relied upon by the plaintiff in this suit.

It follows, therefore, that the plaintiff is entitled to a decree for an injunction, accounting, and costs, and it is so ordered.