## BALISTOCKY et al. v. SCOVILL MFG. CO.
### No. 4644.

Circuit Court of Appeals, Third Circuit.
Sept. 22, 1932.

Rehearing Denied Oct. 26, 1932.

BUFFINGTON, Circuit Judge, dissenting.

Hugh M. Morris, of Wilmington, Del., and Clifton V. Edwards, of New York City, for appellants.

Thomas G. Haight, of Jersey City, N. J., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and KIRKPATRICK, District Judge.

WOOLLEY, Circuit Judge.

After an original application filed in 1910 and on a divisional application filed in 1916, Letters Patent No. 1,258,423 issued, March 5, 1918, to Fritz Lowenstein for a "variable electrical apparatus." Scovill Manufacturing Company, owner of the patent, brought this suit against dealers in the alleged infringing device. From a decree of the District Court holding claims 1, 2, 3, 4, 9 and 10 valid and infringed, 48 F.(2d) 875, the defendants have appealed.

The controversy revolves around the question: "Precisely what is the invention?"

Once that question has been answered the decision will be a simple matter, for according as the invention is one thing or another the alleged infringing device may fall within it or stands wholly outside of it.

Merely as sign posts at the beginning of what, we fear, will be a long discussion in which the real questions in issue can be developed only toward the end, we shall state the dispute as to the character of the invention. It is: Whether the invention is a condenser which produces logarithmic variations of its own capacity—a condenser logarithmic per se—or is a condenser which, though not producing logarithmic variations of its own capacity, will, when used in a circuit with an outside capacity, vary the total capacity of both condenser and circuit in accordance with the logarithmic law. If the invention be the former, the defendants do not infringe, for their device, as the trial court correctly found, does not vary its own capacity in accordance with the logarithmic law, that is, it is not logarithmic per se; if it be the latter, the defendants may infringe, if, as the plaintiff contends, their device, when connected up with an outside circuit, varies the overall capacity of the circuit in accordance with the logarithmic law. Of course the defendants stand on the first interpretation; the plaintiff on the second.

Referring to the opinion of the learned trial court [48 F.(2d) 875] for a statement of the art and the invention in detail, we shall in this opinion give only enough to make clear the reasoning which has led us to our judgment.

The "variable electrical apparatus," the subject matter of the patent, is a "variable condenser adapted for use in wireless or radio work." A condenser in an electric circuit of a radio receiving set is a device in the nature of a storage reservoir wherein electrostatic energy is received and is there charged and held for a particular use, which will be stated presently.

The ability of a condenser to hold or store the charge is measured by its "capacity"; and capacity in turn is determined by the overlapping plate area. In the prior art and in the art of today, a condenser consists of a group of parallel fixed plates and a group of parallel movable plates with air (the dielectric) between. The movable plates are mounted on a shaft and arranged to intermesh with the fixed plates. In the process of bringing the plates in relation one with another the overlap, of course, varies as the plates are moved in and out, hence the term "variable" condenser. As the plate variation involves correspondingly a variation in the charge of energy (at the will of the operator), the device is used to pick up and select —tune in—waves of different frequencies coming from broadcasting stations hither and yon.

Long before Lowenstein, such devices, particularly those with semi-circular plates, were in use for that purpose; and also long before him plates were given different shapes to produce different capacities which conformed to different laws, more commonly the law of arithmetic. Therefore Lowenstein in no sense conceived a condenser or a plate condenser or its uses. Nor was he first to vary the capacity of a condenser by varying the shape of the plates and distributing the plate area. What he did was this:

In 1910 he filed an application for a patent for "wireless telegraph apparatus and system." It was a complicated arrangement whose main purpose was to effect cooperatively an adjustment of a condenser and an inductive coil for a certain purpose. It included a condenser described as a "variable tuning element," used, as in the art, to vary its capacity by varying its plate movements, and yet used in combination (and this is critically important) with circuits or other elements of the apparatus. After making many claims for the combination apparatus and

system, Lowenstein applied for claims for the condenser itself, not as an element in the combination of other claims but as a separate, distinct and complete invention. The Patent Office insisted that these claims, being for a condenser which was an invention in itself, should be divided out. Not until 1916 did Lowenstein yield. Then he made a divisional application for a patent for the condenser per se. The parent application eventuated in 1927 in patent No. 1,618,017 for the elaborate wireless apparatus and system and not for a condenser, and the divisional application eventuated in 1918 in the patent in suit for a condenser and for nothing else. Hence, on first impression, we naturally think that, except by the division out Lowenstein preserved the early date of the parent patent, the two patents are for separate inventions and that in construing the claims of the patent in suit we must first look at their disclosures to see what the invention is rather than at the disclosures of the parent patent from which it was bodily plucked out and set upon its own feet. The plaintiff, however, does not think so; neither did the trial court, for both rely for a construction of the condenser of the divisional patent upon an expression in the parent patent to which we shall advert further on.

The claims of the divisional patent—the patent in suit—are, when compressed, substantially as follows:

Each of the six claims in suit is for a "condenser" or a "variable electrical apparatus" which, in this instance, are the same thing. In each claim the instrument is described, in different terms, as a set of stationary parallel plates suitably spaced apart, and a set of movable parallel plates adapted to enter between the stationary plates, the plates of one of the sets being so formed that a given angular displacement of the movable plates produces (as stated in claims 1 and 3) equal percentage change in capacity for equal plate movements, and produces (as stated in claims 2, 9 and 10) variation of capacity in accordance with the law of geometric progression, and produces (as stated in claim 4) a change in capacity in accord with a certain mathematical equation or formula.

These different expressions in the several claims have been treated by the parties and will be regarded by us as the equivalent of the "logarithmic law," which, however expressed, is the essential characteristic of each claim, indeed, the core of the invention.

As shown by the history of the patent prosecution and by the plain words of its specification and claims, the patent in suit, undoubtedly, is for a condenser per se. While the invention may not be limited to that which is diagrammatically disclosed, it is, equally without doubt, a condenser of the old plate type, whatever the shape of the plates, whose capacity, variable as before, is altered in equal percentage changes or conforms to the law of geometric progression. This is effected, as illustrated in the patent, by cutting off or stepping down the movable semi-circular plates in such a measure, at such an angle and in such order that equal movements of the progressively shortened movable plates in mesh with the stationary plates will result in equal percentage changes in capacity, i. e., will conform to the logarithmic law, producing, as a practical matter (after-discovered), a more gradual movement in approaching on the dial of a receiving set and in picking up any desired wave of high or low frequency from the antennæ. Although it was well-known in 1910 that the "form of the semi-circular plates can be so altered that any law of change in capacity may be followed," in other words, that any one with skill could mathematically plot the plates and, with patience, could shape or clip them and get what he wanted in the form of variable capacity, it may be that Lowenstein, in redistributing the plate area of the old semi-circular plate condenser by making a peculiar angular displacement of the plates that would bring about a variation of capacity at a rate not according to the arithmetical law but in harmony with the logarithmic law, made an invention. Yet the only disclosure as to shape is that suggested by the function. Also, were he first to apply an old law to an old condenser, and if variation of capacity according to that law produced a new and useful result in permitting a gradual approach in tuning, which, though vigorously claimed in the plaintiff's brief, is, oddly enough, not mentioned in the claims in suit, it may, conceivably, be invention. Even when looked at in that way, the plaintiff comes very near claiming a function. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 557, 18 S. Ct. 707, 42 L. Ed. 1136. However, as the decision of this case will not turn on the issue of validity, we shall assume without deciding that the claims of the patent are valid.

Expecting this, yet wanting something more, the plaintiff, we understand, admits, as it should, that the patent is for a condenser per se but contends that, even so, it is not for a condenser logarithmic per se. Although it has taken some time to reach this point, just here is the crux of the case.

It was necessary for the plaintiff to take this position because the alleged infringing device is a condenser not logarithmic per se. In order to prove that the invention is something different from a condenser logarithmic per se, which the divisional patent seems to show it to be, the plaintiff contended at the trial (as it contends here) and the learned trial judge ruled that in construing the invention of the divisional patent (the one in suit) the descriptive terms of the parent patent may be resorted to on the theory that a divisional application is no more than an amendment to the parent application (Dwight & Lloyd Sintering Co. v. Greenawalt [C. C. A.] 27 F.(2d) 823, 831) and that, accordingly, when a certain paragraph from the parent patent is read into the divisional patent it shows not a condenser with a variable capacity logarithmic per se but a condenser in circuit with an over-all variable capacity that is logarithmic. The rule of the Dwight v. Greenawalt Case, however applied, does not mean that one portion of the parent application may be read on the invention of the divisional application to the exclusion of another portion. It means only that the whole of the original application may be examined in order to discover the invention divided out and sought to be patented separately yet under the earlier date of the original. The only part of the whole original application here relied upon as extending to and influencing the invention of the divisional patent is as follows:

"When all the capacity of an oscillating circuit is located in the capacity instrument (condenser) the simple logarithmic characteristic is given to this capacity instrument. When a fixed capacity however is in series with the instrument capacity, the instrument capacity has to be given such capacity values as will in conjunction with the fixed capacity give a resultant capacity of the circuit having the logarithmic characteristic." Patent No. 1,618,017, p. 8, lines 21–31.

That paragraph contains two sentences; each sentence a thought; each thought an inventive concept. The latter sentence, on which the plaintiff relies, is directed to the combination of the main invention of the parent patent, of which the condenser is only an element; the former concerns a condenser for which in the original application separate claims were made and denied and which, on division, became alone the inventive subject matter of the divisional patent. The latter sentence contemplates a variable over-all capacity of the condenser and a circuit in series having the logarithmic characteristic; the former a separate capacity with a like characteristic in the condenser alone. In this interpretation of the paragraph we are, in a measure, supported by the plaintiff which, in its brief, said:

"In order to attain the beneficial results of Lowenstein's invention, the capacity which is to be varied logarithmically by the condenser may be either the capacity of the condenser itself or the total circuit capacity, which includes both the capacity of the condenser and the fixed capacity of the circuit. * * * that Lowenstein had both situations in mind is clearly set forth in" the above quotation from the original application.

The difference between the plaintiff and ourselves is that it reads the paragraph as embracing but one invention to be applied to two different "situations" while we read it as embracing two inventions to do two different things, for which the Patent Office thought two patents should issue and for which actually two patents did issue.

We think the latter view must be right for, manifestly, a condenser to be used in one situation or the other has to be organized to serve that particular situation, which may or may not include a circuit with an outside capacity, and which differs in its organization as the situations differ and, necessarily, differs in the things of which resultant capacity is a variation. Therefore, when two condensers of a given type are taken and differently shaped and organized to do different things in different ways they cannot, after their reorganization, be the same condenser. If this be not true, then here is a case where two patents have issued for the same invention.

In construing the invention of the divisional patent in suit we shall now look at both the original application and the divisional application. The original application shows two inventions. For the main invention, which involved, inter alia, the combination of a condenser and a circuit, claims were allowed and the patent issued (No. 1,618,-017). The claims for a condenser per se were not there allowed but were divided out and on the division were allowed in the patent in suit (No. 1,258,423). Here was an official and a very complete separation of the two inventions in which the inventor acquiesced. They were associated in the original application but were not entangled one with the other. It follows that after separation by division out they remain separate. Therefore the invention of the divisional patent must stand on its own terms which nowhere disclose a

condenser in combination with a circuit of a fixed outside capacity resulting in an over-all capacity with a logarithmic characteristic but plainly disclose an instrumentality with the logarithmic characteristic within itself. Turning to the patent, that instrumentality is by its terms a "condenser," and a condenser of the intermeshing plate type, yet one with its plates so shaped and arranged that "equal angular movements of the movable plates should produce equal percentage changes in capacity" (logarithmic law).

Continuing, Lowenstein says: "It is the principal object of the present invention to produce *a condenser* of this character." He then discloses how the thing can be done by cutting off the plates at different angles. He then explains the functional result:

"The proportioning of the plates and their arrangement is such that the *capacity of the condenser* is variable substantially in accordance with the logarithmic law given above. Furthermore, the change in capacity is much more gradual than in a *condenser* of the types heretofore known."

Coming to the claims, four are for a "condenser" and two for "variable electrical apparatus;" which means a condenser. Nowhere in the specification or in any of the claims is there a suggestion that the condenser is in combination with anything outside of its own organization. Nor is there anything to indicate that the plate shaping and movements and their peculiar result are dependent on anything outside of the condenser. Instead of implying that "capacity" means condenser capacity plus outside capacity, as the plaintiff contends, the patent itself states the kind of capacity it means by describing the "percentage change in capacity at any point within the range of the *instrument*." All the words of the six claims disclose very plainly that a condenser whose plates are so designed and arranged with respect to one another "that movement of the movable plates produces variation of capacity in accordance with the law of geometric progression" is a condenser logarithmic per se. Such we hold to be the invention of the claims of the patent in suit. Concededly the separate units of the alleged infringing condensers, with percentage changes ranging from 21.3 to 9.4, are not logarithmic per se. Nor are they so when in gangs. (The court's finding that they were in series with the entire circuit was an admitted inadvertence.) It follows they do not infringe the patent.

With these conclusions the discussion ends. However, before formally deciding the case we think we owe Judge Thomas, as well as the plaintiff who relies strongly on his decision in Scovill Manufacturing Company v. Satler (D. C.) 21 F.(2d) 630, sustaining claims of the same patent, a respectful reference to that decision.

The case before the District Court for the District of Connecticut was, we gather from the opinion, very different from this one. There was in that case (so far as the opinion shows) no dispute about what was the invention and, accordingly, no question of a condenser in combination with a circuit having a fixed outside capacity producing, after adjustment, an over-all capacity with the logarithmic characteristic. The case simply dealt with a condenser per se. The question of validity, we assume, was directed not to the plaintiff's cam plate commercial device, which it now appears does not by itself follow the logarithmic law, but to the condenser of the patent which (as we read the opinion) was represented to or believed by Judge Thomas to be logarithmic per se. The case, as disclosed by the opinion, decided only certain things: (1) That the invention, either proved or taken for granted to be a condenser logarithmic per se, is new; (2) that it is useful; (3) that, in consequence, it is patentable invention; (4) that the invention is not limited to the diagramatic disclosure with stepped-down plates but covers condensers with plates differently shaped if they still develop the logarithmic characteristic; and, finally, (5) that claims 1, 2, 3 and 4 are valid and (6) were infringed by a condenser that was logarithmic per se. With this understanding of the Scoville v. Satler decision, we are constrained to believe that, aside from the light which it throws on the art and the patent, it has no bearing on the peculiar issues of this case.

Holding that the claims in suit, if valid, have not been infringed, we direct that the decree of the District Court be reversed and that further proceedings be had in conformity with this opinion.

BUFFINGTON, Circuit Judge (dissenting).

The present case shows a difference of view and decision between the Second and Third Circuits as to patent No. 1,258,423 to Fritz Lowenstein for "a variable electrical apparatus." In the District of Connecticut this patent was considered by Judge Thomas, whose opinion is reported at 21 F.(2d) 630. He held the patent valid and infringed. Thereafter the same patent came before the

United States District Court for the Eastern District of Pennsylvania. The case was tried by Judge Thompson, then District Judge. After an independent study thereof, for it was against a different defendant, Judge Thompson found himself in accord with the reasoning and conclusions of Judge Thomas and likewise held the patent valid and infringed. He agreed with, and in his opinion reported at 48 F.(2d) 875, 879, quoted, the view of Judge Thomas, namely, that the device of the defendant in that case, as also in the present one, was "the same in kind and effected by the employment of his (the plaintiff's) mode of operation in substance." In addition, Judge Thompson found as facts, and he had evidence from which he could so find, that

"1. The condenser of the patent in suit is so constructed that given angular displacement of the movable plates produces substantially the same percentage changes in capacity at any point within the range of the instrument.

"2. The condenser of the patent in suit having the logarithmic characteristic is not by its claims limited to a construction where all the capacity is located in the condenser as a single unit.

"3. The patent in suit includes a condenser, the capacity of which may be in series with a fixed capacity, resulting together in a circuit capacity having the logarithmic characteristic.

"4. The logarithmic characteristic of the patented condenser is accomplished by such a distribution of the area of the movable plates that, by the turning of the shaft, the capacity is introduced more gradually at the high frequency end of the working range of the instrument than at the low frequency end.

"5. The defendant's gang condenser is so constructed that given angular displacement of its movable plates produces substantially the same percentage changes in the total circuit capacity at any point within the range of the instrument.

"6. While the defendant's gang condenser is not shown to be so constructed that given angular displacement of the movable plates of each unit active between the stationary plates is in accordance with the logarithmic law, the result of the displacement of the movable plates of the units acting together in series with the entire circuit is substantially the same as in the patented condenser, and it is accomplished in the same way.

"7. The patent in suit is not anticipated by the prior art."

As to the practical working effect of Lowenstein's invention, I regard it as a departure from preceding practice and a notable advance in the art, and I find nothing in the record or in the discussion of the patent to controvert that view of its original and meritorious character. Without, however, again discussing the patent, which has been done by the two experienced trial judges, I find myself in accord with their conclusions and with the findings of fact of Judge Thompson in the present case. I therefore range myself with them, and while it is unfortunate that I differ from my colleagues, whose views are set forth at length in the scholarly and able opinion of this court, and it is regrettable that diversity of view and decision has arisen between the Second and Third Circuits as to this patent, I am nevertheless, in view of its importance in the working art, constrained to differ with my colleagues in the present case and respectfully record my dissent.